## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **AUTHWALLET, LLC,** | |
| **Plaintiff** | **Civil Action No.** |
| **v.** | |
| **TOTAL SYSTEM SERVICES LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant** | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

AuthWallet, LLC ("Plaintiff" or "AuthWallet") files this Original Complaint and demand for jury trial seeking relief from patent infringement of the claims of U.S. Patent No. 8,099,368 ("the '368 patent") and U.S. Patent No. 9,292,852 ("the '852 patent") (referred to as the "Patents-in-Suit") by Total System Services LLC, ("Defendant" or "Total System Services").

### I.    THE PARTIES

1.   Plaintiff is a Texas Limited Liability Company with its principal place of business located in Harris County, Texas.

2.  On information and belief, Defendant is a corporation organized and existing under the laws of the State of Georgia, with a regular and established place of business located at One TSYS Way, Columbus, GA, 31901.

1

**II.** On information and belief, Defendant sells and offers to sell products and services throughout Georgia and introduces products and services that perform infringing methods or processes into the stream of commerce knowing that they would be sold in Georgia. Defendant can be served with process through their registered agent, CT Corporation System, 289 S Culver Street, Lawrenceville, Georgia 30046, at its place of business, or anywhere else it may be found.

### III.    JURISDICTION AND VENUE

4.  This Court has original subject-matter jurisdiction over the entire action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because Plaintiff's claim arises under an Act of Congress relating to patents, namely, 35 U.S.C. § 271.

5.  This Court has personal jurisdiction over Defendant because: (i) Defendant is present within or has minimum contacts within the State of Texas and this judicial district; (ii) Defendant has purposefully availed itself of the privileges of conducting business in the State of Georgia and in this judicial district; and (iii) Plaintiff's cause of action arises directly from Defendant's business contacts and other activities in the State of Georgia and in this judicial district.

6.  Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b). Defendant has committed acts of infringement and has a regular and established place of business in this District. Further, venue is proper because Defendant

conducts substantial business in this forum, directly or through intermediaries, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct and/or deriving substantial revenue from goods and services provided to individuals in Georgia and this District.

## IV.    INFRINGEMENT - Infringement of the '368 Patent

7. On January 17, 2012, U.S. Patent No. 8,099,368 ("the '368 patent", included as Exhibit A and part of this complaint) entitled "Intermediary service and method for processing financial transaction data with mobile device confirmation" was duly and legally issued by the U.S. Patent and Trademark Office. Plaintiff owns the '368 patent by assignment.

8. The '368 patent relates to novel and improved methods and systems for processing financial transaction data in a server including a processor and an associated storage area.

9. Defendant maintains, operates, and administers systems, products, and services that infringes one or more of claims 1-29 of the '368 patent, literally or under the doctrine of equivalents. Defendant put the inventions claimed by the '368 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service. Defendant's acts complained of herein

caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

10.   Support for the allegations of infringement may be found in the chart attached as Exhibit B.  These allegations of infringement are preliminary and are therefore subject to change.

11.   Defendant has and continues to induce infringement. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., processing financial transaction data in a server including a processor and an associated storage area) such as to cause infringement of one or more of claims 1-29 of the '368 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known of the '368 patent and the technology underlying it from at least the filing date of the lawsuit.[1] For clarity, direct infringement is previously alleged in this complaint.

12.   Defendant has and continues to contributorily infringe. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., processing financial transaction data in a server including a processor and an associated storage area) and related services such as to cause

---

[1]Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

infringement of one or more of claims 1-29 of the '368 patent, literally or under the doctrine of equivalents. Further, there are no substantial noninfringing uses for Defendant's products and services. Moreover, Defendant has known of the '368 patent and the technology underlying it from at least the filing date of the lawsuit.[2] For clarity, direct infringement is previously alleged in this complaint.

13.    Defendant has caused and will continue to cause Plaintiff damage by direct and indirect infringement of (including inducing infringement of) the claims of the '368 patent.

### V.    INFRINGEMENT – Infringement of the '852 Patent

14.    On March 22, 2016, U.S. Patent No. 9,292,852 ("the '852 patent", attached as Exhibit A) entitled "System And Method For Applying Stored Value To A Financial Transaction" was duly and legally issued by the U.S. Patent and Trademark Office.  Plaintiff owns the '852 patent by assignment.

15.    The '852 patent relates to novel and improved methods and systems for processing financial transaction data.

16.    Defendant maintains, operates, and administers online platforms, products and services that facilitate financial transaction data processing that infringes one or more claims of the '852 patent, including one or more of claims 1-40, literally

---

[2] Plaintiff reserves the right to amend and add inducement pre-suit if discovery reveals an earlier date of knowledge.

or under the doctrine of equivalents. Defendant put the inventions claimed by the '852 Patent into service (i.e., used them); but for Defendant's actions, the claimed-inventions embodiments involving Defendant's products and services would never have been put into service.  Defendant's acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendant's procurement of monetary and commercial benefit from it.

17.    Support for the allegations of infringement may be found in the chart attached as Exhibit D. these allegations of infringement are preliminary and there fore are subject to change.

18.    Defendant has and continues to induce infringement. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and services (e.g., payment products and services that facilitate purchases from a vendor using a bridge computer) such as to cause infringement of one or more of claims 1–18 of the '852 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known or should have known of the '852 patent and the technology underlying it from at least the date of issuance of the patent.

19.    Defendant has and continues to contributorily infringe. Defendant has actively encouraged or instructed others (e.g., its customers and/or the customers of its related companies), and continues to do so, on how to use its products and

services (e.g., payment products and services that facilitate purchases from a vendor using a bridge computer) and related services such as to cause infringement of one or more of claims 1–18 of the '852 patent, literally or under the doctrine of equivalents. Moreover, Defendant has known or should have known of the '852 patent and the technology underlying it from at least the date of issuance of the patent.

20. Defendant has caused and will continue to cause Plaintiff damage by direct and indirect infringement of (including inducing infringement of) the claims of the '852 patent.

## VI.    CONDITIONS PRECEDENT

21. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has plead all statutory requirements to obtain pre-suit damages. Further, all conditions precedent for recovery are met.

## VII.   JURY DEMAND

Plaintiff hereby requests a trial by jury on issues so triable by right.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a.   enter judgment that Defendant has infringed the claims of the '368 patent;

b.   award Plaintiff damages in an amount sufficient to compensate it for Defendant's infringement of the Patents-in-Suit in an amount no less than

a reasonable royalty or lost profits, together with pre-judgment and post-judgment interest and costs under 35 U.S.C.

§ 284;

c.    award Plaintiff an accounting for acts of infringement not presented at trial and an award by the Court of additional damage for any such acts of infringement;

d.    declare this case to be "exceptional" under 35 U.S.C. § 285 and award Plaintiff its attorneys' fees, expenses, and costs incurred in this action;

e.    provided discovery reveals that Defendant knew (1) knew of the patent-in-suit prior to the filing date of the lawsuit; (2) after acquiring that knowledge, it infringed the patent; and (3) in doing so, it knew, or should have known, that its conduct amounted to infringement of the patent, declare Defendants' infringement to be willful and treble the damages, including attorneys' fees, expenses, and costs incurred in this action and an increase in the damage award pursuant to 35 U.S.C. § 284;

f.    a decree addressing future infringement that either (if) awards a permanent injunction enjoining Defendant and its agents, servants, employees, affiliates, divisions, and subsidiaries, and those in association with Defendant from infringing the claims of the Patents-in-Suit, or (ii) awards damages for future infringement in lieu of an injunction in an amount

consistent with the fact that for future infringement the Defendant will be an adjudicated infringer of a valid patent, and trebles that amount in view of the fact that the future infringement will be willful as a matter of law; and

g.  award Plaintiff such other and further relief as this Court deems just and proper.

Respectfully submitted this 9th day of August 2024.

**THE DUCOS LAW FIRM, LLC**
Alexander Shunnarah Trial Attorneys, of Counsel
*/s/ Kristina Ducos*
Kristina Ducos
Georgia State Bar No. 440149
 600 Peachtree Street NE, Suite 3710
Atlanta, Georgia 30308
(404) 469-9574 (telephone)
(470) 220-5130 (fax)

&

**Ramey LLP**

*/s/ William P. Ramey, III*
William P. Ramey, III (*pro hac vice anticipated*)
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com
***Attorneys for AUTHWALLET, LLC***

# EXHIBIT A

US008099368B2

(12) **United States Patent**

Coulter et al.

(10) Patent No.: **US 8,099,368 B2**

(45) **Date of Patent:** **Jan. 17, 2012**

(54) **INTERMEDIARY SERVICE AND METHOD FOR PROCESSING FINANCIAL TRANSACTION DATA WITH MOBILE DEVICE CONFIRMATION**

(75) Inventors: **Todd R. Coulter**, Rancho Murieta, CA (US); **Mordechai E. Kaplinsky**, Brooklyn, NY (US); **Christopher E. Lewis**, Tempe, AZ (US)

(73) Assignee: **FonWallet Transaction Solutions, Inc.**, Rancho Murieta, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **12/557,457**

(22) Filed: **Sep. 10, 2009**

(65) **Prior Publication Data**

US 2010/0121767 A1     May 13, 2010

**Related U.S. Application Data**

(60) Provisional application No. 61/112,749, filed on Nov. 8, 2008.

(51) **Int. Cl.**
*G06Q 20/00*     (2006.01)

(52) **U.S. Cl.** ............... **705/67**; 705/64; 705/65; 705/75; 705/44; 380/229; 380/247; 380/248; 380/249; 380/250; 713/155; 713/156; 713/157; 713/158; 713/159

(58) **Field of Classification Search** ..................... 705/67
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,999,943 B1 * 2/2006 Johnson et al. ................. 705/39
7,357,310 B2   4/2008 Calabrese et al.

2002/0138445 A1     9/2002 Laage et al.
2002/0143634 A1 * 10/2002 Kumar et al. ................... 705/18
2008/0010191 A1     1/2008 Rackley, III et al.
2008/0172317 A1 *  7/2008 Deibert et al. .................. 705/35
2009/0192904 A1     7/2009 Patterson et al.
2009/0325542 A1   12/2009 Wentker et al.

FOREIGN PATENT DOCUMENTS

JP     2011118898 A * 11/2010

OTHER PUBLICATIONS

Krueger, Malte. The Future of M-payments—Business Options and Policy Issues—Background Paper No. 2 Electronic Payment Systems Observatory (ePSO) (Aug. 2001). Retrieved online Sep. 29, 2011. http://ftp.jrc.es/EURdoc/eur19934en.pdf.*
International Search Report and Written Opinion for PCT/US09/63641; Applicant: FonWallet Transaction Solutions, Inc.; Mailing Date: Dec. 15, 2009, 8 pages.

* cited by examiner

*Primary Examiner* — James A Reagan

(74) *Attorney, Agent, or Firm* — Perkins Coie LLP

(57)     **ABSTRACT**

A transaction processing service operates as an intermediary between acquirers of financial transaction requests and issuing institutions that process the financial transaction requests. The intermediary service utilizes a customer's mobile device as an out-of-band communication channel to notify a customer of a received financial transaction request. To send the notification, the intermediary service retrieves stored customer information, including an address of the customer's mobile device and a list of payment instruments that can be used to pay for the transaction. Before continuing to process the received financial transaction request, the service may first require the customer to confirm the transaction via the mobile device. The intermediary service retrieves financial account information associated with the customer from issuing institutions, and, if the transaction is confirmed, provides the account information to acquirers in order to allow transactions to be processed.

**29 Claims, 13 Drawing Sheets**





**FIG. 1**
**Prior Art**



**FIG. 2A**



**FIG. 2B**



**FIG. 2C**



**Transaction Confirmation**

Vendor:  Restaurant Alice
Total:  $75.24
Billed to:  Chase Debit
(Personal)

Please confirm or deny this
transaction by selecting the
appropriate button below.

Confirm      Deny

*FIG. 3B*

**Transaction Confirmation**

Vendor:  Barnes & Noble
Total:  $21.36
Billed to:  Visa (Personal)

No response required to
approve this transaction.

If this is a transaction that
you are not familiar with,
please select the deny button
below.

Deny

*FIG. 3A*

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 17 of 99



242

**Transaction Confirmation**

222

Vendor: Restaurant Alice
Total: $75.24

Please select payment
instrument:

244

Checking account ▼

Please confirm or deny
this transaction:

232

Confirm

226

Deny

*FIG. 3D*



234

**Transaction Confirmation**

222

Vendor: Office Depot
Total: $132.16
Billed to: AmEx (Business)

236

To approve this transaction,
please enter your verification
code:

238

✱✱✱✱

240

Enter

226

Deny

*FIG. 3C*

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 18 of 99



*FIG. 4*

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 19 of 99



*FIG. 5*



**FIG. 6A**



*FIG. 6B*



Start
702
Receive initial authorization request
700
704
Initial authorization request associated with intermediary service?
No
706
Send initial authorization request to payment association
Return
Yes
708
Send information request to intermediary service
710
Receive account information from intermediary service
712
Generate modified authorization request
714
Send modified authorization request to payment association
716
Receive authorization
718
Send authorization to point of purchase
Return

*FIG. 7*



*FIG. 8*

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 24 of 99



*FIG. 9*

US 8,099,368 B2

**1**

## INTERMEDIARY SERVICE AND METHOD FOR PROCESSING FINANCIAL TRANSACTION DATA WITH MOBILE DEVICE CONFIRMATION

### CROSS-REFERENCE TO RELATED APPLICATIONS

This application claims the benefit of U.S. Provisional Application No. 61/112,749, entitled "Mobile Card Access & Authorization", filed on Nov. 8, 2008. This application is related to concurrently filed U.S. patent application Ser. No. 12/557,453, entitled "System and Method for Processing Financial Transaction Data Using an Intermediary Service,".

### BACKGROUND

Companies that participate in electronic transaction systems (e.g., transaction systems that process credit cards, debit cards, etc.) must balance a number of competing concerns in their interactions with the systems. As businesses, companies must track their costs in dealing with transaction systems. For example, merchants who accept credit cards are subject to various fees when processing transactions. Merchants may therefore decide to accept certain credit cards and reject others, or require a minimum charge amount when accepting a card for payment, in order to reduce fees. In addition, merchants must track and make policy decisions about how they use and protect personal information associated with transactions. Government regulations and private contracts (e.g., with the credit card associations) set privacy and security requirements that banks and merchants must satisfy. The privacy and security requirements place limits on data security and encryption and also limit the types of data that can be transmitted using different formats. These concerns are interrelated because participants in the system pay lower fees when more customer information is provided with the transaction information. Fees are lower because the additional customer information can generally be retrieved only from the physical card itself, indicating that the card was present at the time of the transaction. Thus, a purchase at a brick-and-mortar business is charged a lower processing fee than a purchase on the Internet, because the brick-and-mortar business is able to transmit more customer information to the credit card company.

Consumers also balance competing concerns. Avoiding losses from fraudulent or erroneous transactions is a particular concern. Currently, some issuing institutions use automated systems that attempt to detect and reject suspicious transactions based on transaction characteristics (e.g., location, amount, etc.). However, these automated systems are often unsuccessful in differentiating legitimate transactions and fraudulent transactions. Otherwise, consumers can generally detect fraudulent or erroneous transactions only by reviewing their bill or statement to verify that every transaction is correct. Reviewing bills is inconvenient because it requires continual vigilance from the consumer. In addition, several days or weeks may pass before an erroneous or fraudulent transaction is detected. Thus, it would be useful to have payment systems that enable consumers to more efficiently detect these incorrect transactions.

Convenience is also a major concern for consumers. The average consumer may pay for purchases using multiple payment instruments, such as credit cards, debit cards, and gift cards. Each payment instrument has a separate card or token and a separate set of identifying information, such as credit/debit card numbers, that must be tracked. Managing multiple payment instruments can therefore be complicated and cumbersome. Thus, it would be useful to consumers to be able to manage multiple payment instruments in a simple fashion.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a block diagram of a representative environment for processing financial transaction data according to prior art methods.

FIG. **2**A is a block diagram that illustrates communication steps for sending an authorization request to an intermediary service.

FIG. **2**B is a block diagram that illustrates a two-step authorization process performed by the intermediary service.

FIG. **2**C is a block diagram that illustrates a process for authorizing a transaction using a modified authorization request.

FIGS. **3**A-**3**D are representative user interfaces presented to a customer of a mobile device during a financial transaction.

FIG. **4** is a block diagram of a representative server architecture.

FIG. **5** is a logical block diagram of the intermediary service.

FIGS. **6**A and **6**B are a flow chart of a process for processing financial transaction data executed by an intermediary service.

FIG. **7** is a flowchart of a process for processing financial transaction data executed by an acquirer.

FIG. **8** is a logical block diagram of the acquirer.

FIG. **9** is a block diagram of encrypted message routing through the intermediary service.

### DETAILED DESCRIPTION

A transaction processing service that operates as an intermediary, between acquirers of financial transaction requests and issuing institutions that process the financial transaction requests is disclosed (hereinafter referred to as "the intermediary service" or "the service"). The intermediary service utilizes a customer's mobile device as an out-of-band communication channel to notify a customer of a received financial transaction request. In certain circumstances, before continuing to process the received financial transaction request the service must first receive the customer's confirmation of the transaction. By seeking out-of-band confirmation from a customer to a transaction, the disclosed intermediary service thereby significantly reduces the occurrence of fraud without changing or otherwise burdening standard merchant payment processes.

To initiate a transaction, a customer presents a card or token containing unique identifying information to a merchant in order to pay for a purchase. The token may be, for example, an RFID tag or other contactless device for providing the unique identifying information and may be contained in or attached to the customer's mobile device. The merchant transmits the unique identifying information to an acquirer (i.e., a financial institution that provides a clearinghouse service for consolidating financial transactions) in an initial authorization request. The acquirer recognizes that the initial authorization request is associated with the intermediary service based on the unique identifying information, and transmits at least part of the initial authorization request to the intermediary service. The intermediary service authenticates the request and retrieves stored customer information from a database based on the identifying information. The stored customer information includes an address of the customer's mobile device, a

US 8,099,368 B2

**3**

reference to one or more payment instruments associated with the customer, and a verification code associated with the customer's intermediary service account.

Using the retrieved address of the device, the intermediary service transmits a transaction notification message to the customer's mobile device. The transaction notification message may include the name or location of the point of purchase, the transaction amount, a listing of payment instruments that may be used to pay for the transaction, and/or other pertinent characteristics of the transaction. The transaction notification message may also specify a required response from the customer. The required response may vary depending on the requesting merchant, the type of transaction, the amount of the transaction, or other factor associated with the transaction (e.g., the type of goods or services being sold, an assessment of the likelihood of fraud, etc.). For example, a low-price transaction may require no response, a higher value transaction may require that the customer confirm the transaction, and a still higher value transaction may require that the customer confirm the transaction and provide a verification code in response to the transaction notification message. The transaction notification message is presented to the customer on the mobile device. The intermediary service may also support fallback methods for transmitting the transaction notification message to the customer in the event that the primary method of sending the message to the customer is not available.

If a response is required from the customer, the customer's response is received by the mobile device and transmitted to the intermediary service. The intermediary service continues processing of the initial authorization request based on the customer's response. If the customer fails to respond to the transaction notification message, rejects the transaction, or provides an incorrect verification code, the intermediary service sends a denial message to the acquirer and the transaction fails.

If the customer authorizes the transaction by confirming the transaction, or confirming the transaction and providing a correct verification code, the intermediary service transmits an information request to the issuing institution of a payment instrument that is to be used to complete the transaction. In response to the request, the issuing institution provides account information for the selected payment instrument. The intermediary service forwards the account information to the acquirer, which generates a modified authorization request based on the received account information. The acquirer then sends the modified request to the associated payment association in accordance with its standard practices. By providing the account information to generate the modified authorization request, the intermediary service allows a customer to easily select among multiple payment instruments while using a single token or identifier at the time of payment. In addition, the provided account information may include additional verification that enables the payment association to process the transaction with a lower fee.

In some embodiments, the intermediary service may maintain a record of a set of payment instruments that are available to each customer for purposes of a transaction. One or more payment instruments may be automatically selected for each transaction based on rules that are defined by the intermediary service, by the customer, or by the merchant. Alternatively, a customer may be allowed to select a payment instrument from a list of payment instruments that are provided in a transaction notification message that is transmitted by the service to the customer. The selected payment instrument or payment instruments determine the issuing institution or institutions to which the intermediary service sends the information request.

**4**

In some embodiments, a customer may provide the unique identifying information to an online merchant via a computer interface, such as via a checkout process implemented on a web site. The online merchant transmits the unique identifying information to an acquirer (i.e., a financial institution that provides a clearinghouse service for consolidating financial transactions) in an initial authorization request. The transaction is then processed by the intermediary service in a similar manner to transactions received from a brick-and-mortar merchant. Alternatively, the online merchant may bypass the acquirer by transmitting the information directly to the intermediary service. The transaction may then be processed by the intermediary service as discussed above, with the online merchant acting in the acquirer's role.

When sensitive account information is transmitted through the intermediary service from a financial institution to an acquirer, the account information may remain in an encrypted form that cannot be interpreted or used by the intermediary service. For example, the intermediary service may allow customers to request payment with a debit card that requires a PIN or other unique code. Rather than having the customer enter the PIN or unique code, the PIN or code is transmitted by a financial institution across the intermediary service in an encrypted manner such that it cannot be utilized by the service. Only the intended receiving party has the necessary information to decrypt and use the received PIN or code. In this manner, customers are able to utilize the intermediary service for transactions like debit purchases. Such transactions are normally not available in certain environments because of rules pertaining to the handling and processing of PINs.

Various embodiments of the invention will now be described. The following description provides specific details for a thorough understanding and an enabling description of these embodiments. One skilled in the art will understand, however, that the invention may be practiced without many of these details. Additionally, some well-known structures or functions may not be shown or described in detail, so as to avoid unnecessarily obscuring the relevant description of the various embodiments. The terminology used in the description presented below is intended to be interpreted in its broadest reasonable manner, even though it is being used in conjunction with a detailed description of certain specific embodiments of the invention.

FIG. **1** is a block diagram of a representative environment **100** in which various parties process financial transaction data according to prior art methods. In the prior art environment, a transaction is initiated in step **1** when a customer **102** tenders a credit or debit card **104** at a point of purchase associated with a merchant **106**. As used herein, "point of purchase" refers to any point where a card is used to pay for a good or service. A point of purchase may include, for example, a store, a vending machine, an online retailer, a restaurant, a contractor, a provider of services, etc.

To obtain identifying information contained on a tendered card and initiate the transaction process, the customer **102** or the merchant **106** may swipe the card **104** through a card reader and, if required, enter a PIN or code. Alternatively, for a purchase made via a website, phone, or other network-accessible service, the customer **102** may provide a card number, associated name, and/or other identifying information to the merchant. The identifying information that is obtained from the card depends on the type of transaction and the available systems for reading the card. Standard credit and debit cards include several sets of information referred to as Track 1 and Track 2. The data on Track 1 is considered public, while the data on Track 2 is considered private and must be

US 8,099,368 B2

5

transmitted using special security protections dictated by the issuing bank or the payment association (e.g., Visa, Master-Card, etc.). However, transaction fees are lower if data from Track 2 is also provided. Because of the security restrictions and the lack of a reader that can read the tracks, data from Track 2 is generally not available for online, mail order, or telephone transactions (generally referred to as "card not present transactions").

After receiving identifying information, the merchant **106** in step **2** sends an authorization request to an acquirer **108**. The authorization request includes transaction information such as the identifying information, point of purchase information (e.g., a merchant's name or identifier), and the transaction details (e.g., price, products, quantities, fees and taxes). The acquirer **108** is generally a separate financial institution that functions as a clearinghouse for many electronic transactions. The acquirer **108** in step **3** forwards the authorization request to a payment association **112**, which forwards the request to an issuing institution **110** in step **4**. The issuing institution **110** may be, for example, a bank or other institution that provided the credit or debit card.

After receiving the authorization request, the issuing institution **110** evaluates the request by verifying the identifying information and the transaction amount. The issuing institution **110** then authorizes the transaction in step **5** by transmitting an authorization message to the payment association **112**, which forwards the message to the acquirer **108** in step **6**. In step **7**, the acquirer **108** forwards the authorization message to the point of purchase **106**, which records the completed transaction. At a later time, the issuing institution **110** provides payment for the transaction by transmitting the funds in step **8** to the payment association **112**, which forwards the payment to the acquirer **108** in step **9**. In the final step, the acquirer forwards the funds to the point of purchase **106** in step **10**.

FIGS. **2**A, **2**B, and **2**C illustrate an environment **200** in which an intermediary service **204** operates and depicts the order in which various service and system modules involved in the transaction communicate in order to authorize and facilitate the completion of a specific transaction. FIG. **2**A illustrates the communication steps for sending an initial authorization request to the intermediary service. A transaction begins in step **1** when a customer **102** uses a token **202** to provide unique identifying information to the merchant **106** at a point of purchase (POP) in order to make a purchase. As used herein, "token" is a generic term that refers to various means for providing the unique identifying information to the merchant **106**. For example, a token may be a magnetic strip on a credit or debit card, a radio frequency identification (RFID) tag embedded in a card or mobile device, an optical pattern that is scanned by a scanner (e.g., a bar code) or similar or different technologies for conveying identifying information to the merchant. As discussed above, the identifying information may be provided at the point of purchase by swiping a card or by the customer **102** providing the information such as by typing identifying information using a keyboard (e.g., when purchasing at a website). The point of purchase may alternatively receive the information by detecting, through the use of a radio frequency identification (RFID) reader, an RFID token or other identification token associated with the card or with the customer's mobile device. The token **202** may be issued by the intermediary service **204** and is generally not associated with the customer's credit or debit cards. The unique identifying information may be an alpha-numeric code, a sixteen digit number similar to a credit card number, or one or more pieces of data that uniquely identifies the customer. The point of purchase **106**

6

then generates the initial authorization request based on the received identifying information, point of purchase information, and transaction information and transmits the initial authorization request to the acquirer **108** in step **2**. In some embodiments, the initial authorization request includes a unique transaction identifier. The transaction identifier may be retained throughout the authorization process such that every participant can use it to identify the transaction.

Rather than send the initial authorization request directly to the payment association **112**, the acquirer **108** in step **3** sends at least part of the data from the initial authorization request to the intermediary service **204**. The acquirer is able to route the initial authorization request to the intermediary service **204** because the identifying information transmitted in the authorization request identifies the initial authorization request as being associated with a customer **102** having an account with the intermediary service **204**. After receiving the data from the initial authorization request from the acquirer **108**, as will be discussed in additional detail herein, the intermediary service **204** authenticates the request to ensure that the request has been issued from a valid acquirer and the transaction is valid. Among other steps, the intermediary service **204** also retrieves customer information associated with the transaction. The customer information includes an address of a mobile device that is associated with the customer, one or more payment instruments (e.g., credit cards, debit cards, bank accounts, etc.) that are associated with the token **202**, and a verification code that is associated with the customer, the token, or with a particular payment instrument. The customer information may also include any customer-defined rules on how such payment instruments are to be applied to the transaction.

FIG. **2**B illustrates a two-step authorization process performed by the intermediary service. After authenticating the initial authorization request from the acquirer **108**, at a step **4**a the intermediary service **204** transmits a transaction notification message to a mobile device **206** that is associated with the customer. The mobile device may be a mobile phone, a smart phone, a media player (e.g., an Apple iPod, or iTouch), a mobile game device (e.g. a Nintendo GameBoy, a Sony PSP), a personal digital assistant (PDA), an email device (e.g., a Blackberry), or any other device that may send and receive wireless transmissions. The transaction notification message is transmitted to the mobile device via an XMPP message using the retrieved address of the mobile device. The XMPP message may be sent using a data channel, such as a data network implementing TCP/IP provided by a wireless service provider. The message may be sent to a standard TCP port, such as port 5222. The retrieved address may be, for example, a telephone number, network address, or e-mail address associated with the mobile device. The transaction notification message includes transaction information such as the amount, time, or location of the transaction. The transaction notification message may also request the customer **102** to provide information to continue the transaction, such as to provide a transaction confirmation, a customer-specific, token-specific, or payment instrument specific verification code, and/or a selection of a payment instrument to use for the transaction.

In the event that the intermediary service **204** is unable to transmit the transaction notification message to the mobile device, the intermediary service may support fallback methods for transmitting a transaction notification message to the customer. For example, in the event that the intermediary service is unable to communicate with the mobile device using an XMPP-formatted message, the service may also send the transaction notification message to the device using

**7**

a short message service (SMS) message, an email message, or through another messaging channel. In some embodiments, the intermediary service may call the mobile device (if the mobile device has voice capability) and may use an Interactive Voice Response (IVR) system to solicit the confirmation from the customers. If the mobile device cannot be reached via any channel, in some embodiments the intermediary service **204** transmits the transaction notification message to a different device capable of receiving data messages that is associated with the customer, such as a personal computer. Alternatively, the intermediary service may attempt to communicate with the user through a land-line telephone. The intermediary service may maintain a prioritized list of fallback methods to use, and may proceed through the list until the transaction notification message is delivered to the customer or until a certain period has elapsed and the service declares a delivery failure.

FIGS. **3A**-**3D** are representative screenshots of a transaction notification message that may appear to a customer of a mobile device. Although the figures depict each example message separately, portions of the messages shown in FIGS. **3A**-**3D** may in some cases be combined in a single message. FIG. **3A** depicts a representative screenshot **220** associated with a first notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a Barnes & Noble bookstore), a total amount being charged ($21.36), and a financial instrument that is being used to complete the transaction (a personal Visa card, automatically selected as a result of a service, customer, or merchant rule). For transactions under a first threshold, the service may not require a customer to confirm that the transaction should take place. In the depicted example, the notification message therefore includes a message **224** to the customer indicating that no response is required to approve the transaction. If, however, the customer is unaware of the transaction and therefore believes that the transaction may be a fraudulent one, the customer is presented with a "deny" button **226**. By selecting the deny button, the customer is able to notify the intermediary service that the transaction is fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

FIG. **3B** depicts a representative screenshot **228** associated with a second notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a restaurant), a total amount being charged ($75.24), and a financial instrument that is being used to complete the transaction (a debit card, automatically selected as a result of a service, customer, or merchant rule). For transactions between the first threshold and a second threshold, the service may require a customer to confirm that the transaction should take place. In the depicted example, the notification message therefore includes a message **230** to the customer indicating that the customer must confirm or deny the transaction. To confirm the transaction, the customer may select a "confirm" button **232**. By selecting the confirm button, the customer is able to notify the intermediary service that the transaction should proceed. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

FIG. **3C** depicts a representative screenshot **234** associated with a third notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, Office

**8**

Depot), a total amount being charged ($132.16), and a financial instrument that is being used to complete the transaction (a business American Express card, automatically selected as a result of a service, customer, or merchant rule). For transactions above the second threshold, the service may require a customer to confirm that the transaction should take place by entering the customer's verification code. In the depicted example, the notification message therefore includes a message **236** to the customer indicating that the customer must enter the verification code. A text entry box **238** is provided, which displays a default character (e.g., "*") as an additional security measure as the customer keys in their verification code. After entry of the code, the customer selects an "enter" button **240** to confirm the transaction. By selecting the enter button, the customer notifies the intermediary service that the transaction should proceed, provided that the verification code entered by the customer matches the verification code that is associated with the customer, the token, or the payment instrument and stored by the service. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is fraudulent and thereby cause the intermediary service to terminate the transaction.

FIG. **3D** depicts a representative screenshot **242** associated with a fourth notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a restaurant) and a total amount being charged ($75.24). Rather than the display of an automatically-selected payment instrument that will be used as the financial instrument in the transaction, however, the fourth notification message includes a drop-down menu **244** that allows the customer to affirmatively select the desired payment instrument that the customer would like to use for the transaction. For example, the customer may select a direct transfer from a checking account (depicted), or any debit, credit, gift certificate, or other holder of value that is associated with the account of the customer at the intermediary service. Once the customer has selected the desired financial instrument to use in the transaction, the customer then confirms that the transaction should proceed by selecting the "confirm" button **232**. By selecting the confirm button, the customer is able to notify the intermediary service that the transaction should proceed using the selected financial instrument. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

Returning to FIG. **2B**, when required by the transaction notification message (such as required by the transaction notification messages in FIGS. **3B**-**3D**), the customer **102** uses the mobile device **206** to send a confirmation message. Such a confirmation message is sent in a step **4b**, and may confirm the transaction or deny the transaction in the transaction notification message. If the customer denies the transaction, the intermediary service ends further processing of the first authorization request and notifies the acquirer **108** that the request has been denied. The acquirer, in turn, notifies the merchant who then cancels the transaction.

If, however, the customer confirms the transaction in the notification message from the mobile device **206**, or if the notification message does not require a confirmation receipt from the customer (such as in the transaction notification message in FIG. **3A**) the intermediary service **204** generates an information request, which is used to obtain account information for a selected payment instrument. As described below, the account information is used to complete the pro-

**9**

cess of authorizing the transaction. The information request is based on the initial authorization request, the customer's verification message, and the stored customer information. The information request is to be sent to the appropriate issuing institution with sufficient information to allow the issuing institution to provide the correct account information in response to the request.

If the retrieved customer information only contains a single payment instrument, the information request is constructed and transmitted to the issuing institution associated with the single payment instrument. If, however, the retrieved customer information includes multiple payment instruments, the intermediary service **204** may automatically determine which payment instrument is to be used for the transaction. The determination may be based on default rules that are maintained by the service. For example, the service may require that all transactions below a certain dollar value be processed as a debit transaction, and all transactions above the certain dollar value be processed as a credit card transaction. The determination may be based on rules that are specified by the merchant associated with the transaction. For example, a merchant may only accept a certain type of charge card and the customer may be required to use the charge card that is accepted by the merchant. The determination may also be based on rules that are defined by the customer, such as the use of one payment instrument for charges at restaurants and the use of another payment instrument for charges everywhere else. The customer may define processing rules based on many different factors, such as the location of the purchase, the point of purchase, and the day or date of the purchase. As an example, a customer might specify that a business credit card should be used for transactions occurring during regular business hours on weekdays, while a personal credit card would be used for transactions occurring on a weekend or after normal business hours on a weekday. In some circumstances, such as depicted in FIG. **3**D, the transaction notification message that is transmitted to the customer contains a menu that allows the customer to select which payment instrument that they would like to use for the transaction. If such a selection is made by the customer, the intermediary service uses the selected payment instrument.

The intermediary service **204** transmits the information request to an issuing institution **110** associated with the selected payment instrument. If the intermediary service is integrated with the issuing institution, the request may be directly sent to the issuing institution **110** in step **5a**. The issuing institution **110** responds to the information request by providing account information associated with the selected payment instrument. In some embodiments, the account information is encrypted such that the information can be decrypted by the acquirer **108** but not by the intermediary service **204**. This provides additional security by reducing the number of entities that have access to the account information. However, in other embodiments, the intermediary service **204** decrypts the account information after receiving it from the issuing institution and provides the account information to the acquirer using its own encryption key. Because the account information is obtained directly from the issuing institution, it may also include Track 2 information for the payment instrument, which increases the security and reduces the cost of the transaction.

After obtaining the account information from the issuing institution **110**, the intermediary service in step **7** sends the account information to the acquirer **108**. As discussed below, the acquirer **108** then generates a modified authorization request based on the initial authorization request and the received account information associated with the selected

**10**

payment instrument. In some embodiments, this is done by replacing the identifying information in the initial authorization request with the account information.

In those cases in which the intermediary service **204** does not have a direct relationship with the issuing institution **110** of the selected payment instrument, however, the intermediary service may obtain the necessary account information from a secure storage provider **208**. The secure storage provider **208** is a data storage service that stores account information for payment instruments in a similar fashion to the issuing institution to enable the intermediary service to proceed with the transaction. The account information may be provided to the secure storage provider **208** at any time prior to the transaction, such as when the customer initially registers with the intermediary service. At a step **6a**, a request is made to the secure storage provider **208** for account information associated with the customer's selected payment instrument. At a step **6b**, the secure storage provider responds with the account information. The intermediary service **204** then provides the account information to the acquirer **108**, which generates the modified authentication request as if the information had been obtained from the issuing institution **110**.

FIG. 2C illustrates a process for authorizing a transaction using a modified authorization request. As shown in FIG. **2**C, the process is executed in a similar manner to the process in FIG. **1**. Thus, in step **8a**, the acquirer sends the modified authorization request to the payment association **112**, which in step **9a** sends the request to the issuing institution **110** associated with the selected payment instrument. The issuing institution **110** authorizes the transaction based on the information in the modified authorization request (i.e., the account information provided through the intermediary service **204**). In step **9b**, the issuing institution **110** transmits an authorization message to the payment association **112**, which forwards the authorization message to the acquirer **108** in step **8b**. In step **10**, the acquirer **108** transmits the authorization message to the point of purchase **106**, which records the transaction. The payment process may then be carried out using the method discussed above. In some embodiments, the acquirer **108** also sends a copy of the authorization message or other transaction information (e.g., items purchased) to the intermediary service **204**. The intermediary service **204** may then send a receipt message to the mobile device **206** to indicate that the transaction was authorized.

FIG. **4** is a high-level block diagram showing an example of the architecture of a server **300**. One or more servers **300** may be utilized by, for example, the intermediary service **204** or the acquirer **108** to implement the transaction processing depicted in FIGS. **2**A-**2**C. The server **300** includes one or more processors **302** and memory **304** coupled to an interconnect **306**. The interconnect **306** shown in FIG. **4** is an abstraction that represents any one or more separate physical buses, point-to-point connections, or both connected by appropriate bridges, adapters, or controllers. The interconnect **306**, therefore, may include, for example, a system bus, a Peripheral Component Interconnect (PCI) family bus, a HyperTransport or industry standard architecture (ISA) bus, a small computer system interface (SCSI) bus, a universal serial bus (USB), IIC (I2C) bus, or an Institute of Electrical and Electronics Engineers (IEEE) standard 1394 bus, sometimes referred to as "Firewire".

The processor(s) **302** may include central processing units (CPUs) of the server **300** and, thus, control the overall operation of the server **300** by executing software or firmware. The processor(s) **302** may be, or may include, one or more programmable general-purpose or special-purpose microprocessors, digital signal processors (DSPs), programmable con-

US 8,099,368 B2

**11**

trollers, application specific integrated circuits (ASICs), programmable logic devices (PLDs), or the like, or a combination of such devices. The memory **304** represents any form of random access memory (RAM), read-only memory (ROM), flash memory, or the like, or a combination of such devices.

The software or firmware executed by the processor(s) may be stored in a storage area **310** and/or in memory **304**, and typically includes an operating system **308** as well as one or more applications **318**. Data **314** utilized by the software or operating system is also stored in the storage area or memory. A network adapter **312** is connected to the processor(s) **302** through the interconnect **306**. The network adapter **312** provides the server **300** with the ability to communicate with remote devices, such as clients, over a network **316** and may be, for example, an Ethernet adapter.

FIG. **5** illustrates a logical block diagram of the intermediary service **204**. As discussed above, the intermediary service **204** receives an initial authorization request from the acquirer **108** and executes additional steps to notify the customer of the transaction and receive the customer's verification of the transaction. The intermediary service **204** also requests account information from the issuing institution **110** and provides the account information to the acquirer **108**. Aspects of the service may be implemented as special purpose hard-wired circuitry, programmable circuitry, or as a combination of these. As will be described in additional detail herein, the intermediary service **204** includes a number of modules to implement the functions of the service. The modules and their underlying code and/or data may be implemented in a single physical device or distributed over multiple physical devices and the functionality implemented by calls to remote services. Assuming a programmable implementation, the code to support the functionality of the service may be stored on a computer readable medium such as an optical drive, flash memory, or a hard drive. One skilled in the art will appreciate that at least some of the individual modules may be implemented using application-specific integrated circuits (ASICs), programmable logic, or a general-purpose processor configured with software and/or firmware.

As previously described, the intermediary service **204** receives an initial authorization request from the acquirer **108** and transmits an information request to the issuing institution **110**. The intermediary service **204** receives account information in response to the information request and provides the received account information to the acquirer **108**. The intermediary service **204** also communicates with a mobile device **206** to notify the customer of a requested transaction and receive the customer's verification of the transaction. The intermediary service **204** also interacts with a storage component **402**, which is configured to store configuration information and customer information. In particular, the storage component **402** stores data linking the identifying information received from the acquirer **104** to customer-specific information, such as the address of the mobile device **206**, one or more payment instruments associated with the customer, and a verification code or codes associated with the customer, the token, or the payment instruments.

The intermediary service **204** includes various modules to assist in processing authorization requests. In particular, the intermediary service **204** includes a validation module **404**, which is configured to receive initial authorization requests and validate that the requests are correctly formed. Validating initial authorization requests may include, for example, verifying that the request is correctly structured and includes all of the required data fields. In some embodiments, the authorization request is specified in extensible markup language

**12**

(XML). In these embodiments, validation includes determining that the XML is well-formed.

The intermediary service **204** also includes an authentication module **406**, which is configured to authenticate the sender of the authorization request. Authentication is used to avoid having an imposter pose as a legitimate acquirer for the purpose of submitting fraudulent requests for payment. The authentication module **406** may authenticate the acquirer using methods well known in the art. For example, the authentication module **406** may be configured to verify a digital signature associated with the acquirer and contained in an initial authorization request or in an authentication exchange completed prior to receiving an initial authorization request. Alternatively, the authentication module **406** may be configured to authenticate the acquirer by using a shared encryption key to decrypt a portion of the data in the authorization request. To do so, the authentication module **406** interacts with an encryption module **408**, which is configured to execute an encryption algorithm that is complementary to an encryption algorithm that is used by the acquirer **108**. The encryption module **408** is also used to encrypt messages sent from the intermediary service **204** to mobile devices **206**, issuing institutions **110**, and the data storage service **208**. In some embodiments, the encryption module also decrypts messages received from the issuing institution and encrypts messages sent to the acquirer **108**.

The intermediary service **204** includes a customer management module **410**, which is configured to retrieve customer information associated with the initial authorization request. The customer information is accessed from the storage component **402** based on the identifying information contained in the initial authorization request. As discussed above, the identifying information may be an alpha-numeric code, a sixteen digit number similar to a credit card number, or one or more pieces of data that uniquely identifies the customer (e.g., a customer nickname). The stored customer information include an address of a mobile device associated with the customer, information defining one or more payment instruments that may be utilized by the customer to complete a purchase transaction, and a verification code or codes that are associated with the customer, the token, or the payment instruments. If multiple payments instruments are defined, the customer information may also specify a default payment instrument or a set of parameters for determining which payment instrument should be used for a particular transaction.

After the customer management module **410** retrieves the stored customer information, a rules module **412** determines the service's response to the initial authorization request. In particular, the rules module **412** is configured to determine the type of notification to provide to the customer's mobile device and the required level of customer response to the notification in order to confirm the transaction. The rules module **412** may also determine a selected payment instrument to use in the transaction. The type of notification may vary depending on the type and amount of the transaction. For example, the service may require different responses from the customer depending on the total value of the purchase. At a first level (e.g., less than $25), the service may be configured to send a transaction notification to the mobile device without requiring any response from the customer. At a second level (e.g., between $25 and $100), the service may require that the customer reply to the transaction notification with a response that either authorizes or rejects the transaction. At a third level (e.g., above $100), the service may require that the customer reply to the transaction notification with a response that either authorizes or rejects the transaction, as well as provide a verification code with the response. Such rules may be

US 8,099,368 B2

13

defined by the operator of the service, by merchants that interact with the service, or by customers that use the service. While three levels are provided as an example, it will be appreciated that a greater or lesser number of levels may be utilized by the service. If existing service-, merchant-, or customer-defined rules do not already specify the payment instrument to use in the transaction, the rules module **412** will also require that the customer select a payment instrument to use for the transaction in the response. In some embodiments, the rules module **412** includes merchant-defined rules specifying that certain payment instruments are or are not accepted by a particular merchant. For example, a particular merchant may specify a rule indicating that it will not accept payment using American Express and will accept payment using the merchant's gift cards. The rules module **412** can then use this information in selecting the payment instrument or in limiting the number of payment instruments from which a customer can select for a transaction.

The intermediary service **204** also includes a mobile device communication module **414**, which is configured to communicate with mobile devices **206**. The mobile device communication module **414** generates and transmits a transaction notification message in response to the initial authorization request. The transaction notification message includes transaction information, such as the amount of the transaction and the name or location of the merchant requesting the authorization. The transaction notification message may also specify a payment instrument to use for the transaction or specify a list of payment instruments and request a selection from the list. The transaction notification may be sent to the mobile device in a variety of messaging formats. In some embodiments, the transaction notification is transmitted to mobile devices **206** via an asynchronous XMPP message. To allow a mobile device to receive an XMPP-encoded message, the mobile device includes a mobile device client **418** that runs in the background of the device. The mobile device client **418** may be pre-installed on the mobile device **206**, or may be downloaded to the mobile device **206** when a customer opens an account with the intermediary service. In some embodiments, the mobile device client **418** operates continuously, since it is impossible to predict when a customer might attempt to make a purchase. In these embodiments, the mobile device **206** remains in a state where it always can receive a transaction notification message. However, the mobile device **206** will often operate in a standby or low-power mode in order to preserve battery power. In these embodiments, the mobile device client **418** cannot be operated continuously. Instead, the intermediary service **204** sends a wake-up message to the mobile device client **418** before sending a transaction notification message. The wake-up message may be transmitted on a different messaging channel, such as via a binary SMS message or via a WAP push message or other remote push service.

Once the service has determined that the transaction has been confirmed by the customer, an issuing institution communication module **416** generates an information request based on the received initial authorization request, the customer information, and the information received from the mobile device **206** (if any). In particular, the information request may include the desired payment instrument information, the transaction amount, transaction items, and information about the point of purchase. The issuing institution communication module **414** encrypts the request using the encryption module **408** and transmits the message to the issuing institution **112** where the information request is processed.

14

After the information request is processed by the issuing institution **112**, the issuing institution communication module **414** receives an account information message from the issuing institution that includes account information associated with the selected payment instrument. The account information may include, for example, the credit card number and expiration date of a credit card selected from the set of available payment instruments. After receiving the account information, the intermediary service **204** forwards the information to the acquirer **106**. In some embodiments, the account information is encrypted by the issuing institution **112** such that it can only be decrypted by the acquirer **106** (i.e., the account information cannot be interpreted by the intermediary service **204**). Alternatively, the account information may be decrypted by the intermediary service **204** and re-encrypted for transmission to the acquirer **106**. The acquirer **106** then proceeds according to the process discussed above in FIGS. **2A-C**.

As previously stated, the acquirer **108** may also send information from the authorization message and/or other transaction information to the intermediary service **204**. The mobile device communication module **416** then generates a receipt message and transmits the receipt message to the mobile device **206** using the methods discussed above. In some embodiments, the mobile device client **418** provides a "dispute" button that may be selected by the customer to indicate that the transaction was erroneous or fraudulent such that the issuing institution **110** should initiate dispute proceedings.

FIGS. **6A** and **6B** illustrate a flowchart of a process **500** for processing financial transaction data executed by the intermediary service **204**. Processing begins in block **502**, where the intermediary service **204** receives an initial authorization request from an acquirer **106**. As discussed above, the initial authorization request includes unique identifying information, transaction information (e.g., the amount of the transaction, the transaction identifier, etc.), and point of purchase information. After receiving an initial authorization request, processing proceeds to block **504**, where the service validates the request according to the methods discussed above. The validation step may include, for example, verifying that the message is in a proper format and verifying that the message includes the essential data for handling the request. Processing then proceeds to block **506**, where the service authenticates the requester. As discussed above, the authorization request may include a digital signature provided by the acquirer that can be cryptographically verified. Alternatively, the service may authenticate the acquirer by using a shared cryptographic key to decrypt a portion of the data in the message.

The service then proceeds to block **508**, where it retrieves customer information corresponding to the information in the authorization request. Retrieving customer information may be executed by using some or all of the identifying information in the request as an index into a customer information database. As discussed above, the stored customer information may include information defining one or more payment instruments that the customer has indicated can be used to pay for a transaction. The customer information also includes an address of a mobile device, such as the mobile device's telephone number or IP address. The customer information is provided by a customer during an initial registration process in which the customer registers with the service and enters the appropriate information. Alternatively, the customer information may be provided by, for example, a financial institution that offers the intermediary service as an added benefit to a financial instrument provided to the customer.

US 8,099,368 B2

15

After retrieving the stored customer information, processing proceeds to block **510**, where the service generates a transaction notification message. The transaction notification message includes at least a minimum amount of information to enable the customer to confirm the transaction. Thus, the transaction notification message may include the transaction time, the transaction amount, the point of purchase, and/or the purchase location. The transaction notification message may also specify a payment instrument that will be used for the transaction, or a list of payment instruments that may be used and require that the customer select from the list. In addition, the transaction notification message specifies a required response from the customer, such as an authorization/denial of the transaction or the submission of a verification code.

After generating the transaction notification message, the service proceeds to block **512**, where it sends the message to the mobile device **206**. Processing then proceeds to block **514**, where the service receives a reply from the mobile device **206**. As discussed above, this step is not executed if the transaction notification message did not require a response from the customer. The service then proceeds to decision block **516**, where it uses the reply message to determine whether the transaction was verified by the customer. In some cases, the service may do so by detecting a verification indicator in the reply message, which could simply be a single bit or a "yes" or "no" received from the mobile device **206**. Alternatively, if the reply message includes a verification code, the service compares the received verification code to a verification code in the stored customer information. In some embodiments, the verification code is encrypted by the mobile device **206** using a one-way hash function. The intermediary service then verifies the transaction by comparing the received hash value to a value generated by applying the same one-way hash function to the stored verification code. If the reply message indicates that the customer has denied the request or the customer's verification code does not match the stored verification code, processing proceeds to block **518**, where the service rejects the authorization request. At this step, the service may transmit a rejection message to the acquirer to notify it of the rejected request.

If the transaction is verified by the customer, processing proceeds to block **520** in FIG. **6**B, where the service generates an information request using information from the initial authorization request, the customer information, and/or the customer's reply message. The information request may include identifying information from the initial authorization request or the customer information. After generating the information request in block **520**, processing proceeds to block **522**, where the service sends the message to the appropriate issuing institution.

Processing then proceeds to block **524**, where the service receives an account information message from the issuing institution in response to the information request. As discussed above, the account information includes information associated with the selected payment instrument that can be used to authorize payment. The account information may be encrypted such that it can only be accessed by the acquirer **108**. After receiving the account information, processing proceeds to block **526**, where the intermediary service sends the account information to the acquirer **108**, which can then generate the modified authorization request.

FIG. **7** is a flowchart of a process **700** for processing financial transaction data executed by an acquirer **108**. The process **700** is executed by the acquirer **108** in conjunction with the process **500** executed by the intermediary service of FIGS. **6**A and **6**B. Processing begins at block **702**, where the acquirer **108** receives an initial authorization request from the

16

point of purchase **106**. At a decision block **704**, the acquirer determines whether the initial authorization request should be routed to the intermediary service **204** based on the identifying information contained in the initial authorization request. The determination may include, for example, assessing whether an identifying number contained in the initial authorization request falls within a range of identifying numbers or has a particular prefix associated with the intermediary service **204**. If the initial authorization request is not associated with the intermediary service, at a block **706** the acquirer forwards the initial authorization request to the payment association **112** for processing in accordance with traditional processes as described in FIG. **1**. If, however, the identifying information contained in the initial authorization request indicates that the initial authorization request is associated with the intermediary service, processing continues to block **708**. At block **708**, the acquirer **108** sends at least part of the data from the initial authorization request to the intermediary service **204**.

Processing then proceeds to block **710**, where the acquirer **108** receives account information from the intermediary service **204**. The intermediary service **204** determines the account information using the process **500** of FIGS. **6**A and **6**B. The received account information may be received in encrypted or unencrypted form. If encrypted by the issuing institution or the intermediary service, the acquirer **108** may decrypt the account information using a locally-stored encryption key. After receiving the account information, processing proceeds to block **712**, where the acquirer **108** generates a modified authorization request based on the initial authorization request and the received account information. As discussed above, the acquirer **108** may generate the modified authorization request by replacing identifying information contained in the original request with the received account information. The following is an example of an initial authorization request such as might be received from a point of purchase:

> Transaction Identifier
> Identifying Information
> Initial Track 2 Data (optional)
> Industry Standard Code
> Merchant Information
> Transaction Amount
> Transaction Items

The identifying information results in the initial authorization request being sent to the intermediary service **204**. After sending the initial authorization request to the intermediary service **204**, the acquirer may receive the following account information in response:

> Transaction Identifier
> Real Account Information

The acquirer **108** would then construct the following modified authorization request:

> Transaction Identifier
> Real Account Information
> Real Track 2 Data (optional)
> Industry Standard Code

US 8,099,368 B2

**17**

-continued

| Merchant Information |
| Transaction Amount |
| Transaction Items |

For record-keeping purposes, and in order to ensure that authorization requests are correctly associated with received account information, a transaction identifier may be assigned to each transaction and used by the acquirer and the intermediary server to ensure that all sent and received messages are correctly correlated. The acquirer may store all initial authorization requests, received account information, and modified authorization requests in a data structure so that the acquirer or a third party may subsequently audit the information and confirm that transactions are being appropriately processed.

After the modified authorization request is generated, processing then proceeds to block 714 where the acquirer 108 sends the modified authorization request to the payment association 112. In block 716, the acquirer 108 receives an authorization or a denial in response to the modified authorization request. The acquirer 108 then completes the authorization process by sending the authorization or denial message to the point of purchase 106 in block 718. As discussed above, the acquirer 108 may also send the authorization or denial message to the intermediary service 204 so that the intermediary service 204 can send a receipt message to the customer's mobile device 206. The acquirer 108 may also send transaction details, such as the list of transaction items, to the intermediary service 204 so that the receipt message can include additional transaction details.

While the process 700 has been described as being implemented by the acquirer 108, it will be appreciated that process 700 can be implemented by any party that participates in the transaction approval process. For example, the payment association 112 or an issuing institution 110 may forward initial authorization requests to the intermediary service 204 in lieu of the acquirer forwarding the request. The account information is then returned to the payment association or issuing institution for further processing.

FIG. 8 illustrates a logical block diagram of the acquirer 108 that implements the process 700 of FIG. 7. The acquirer 108 redirects certain authorization requests to the intermediary service 204 and generates modified authorization requests based on information provided by the intermediary service 204. As with the intermediary service 204 shown in FIG. 5, aspects of the acquirer 108 may be implemented as special-purpose circuitry, programmable circuitry, or as a combination of these. The modules in the acquirer 108 may be implemented in a single physical device or distributed over multiple physical devices and the functionality implemented by calls to remote services.

As discussed above, the acquirer 108 receives an initial transaction authorization request from the point of purchase 106 and transmits a modified authorization request to the issuing institution 110 via the payment association 112. The acquirer 108 also communicates with the intermediary service 204 to request account information associated with a particular authorization request and to receive the requested account information. The acquirer 108 also interacts with a storage component 802, which is configured to store information used to integrate with the intermediary service 204. In particular, the storage component 802 stores identifying information (such as ranges of account numbers or account number prefixes) that can be used to determine which authorization requests should be handled by the intermediary ser-

**18**

vice 204. The storage component 802 may also store historical transaction information to be used for auditing or if a transaction is disputed.

The acquirer 108 includes various modules to assist in processing authorization requests. In particular, the acquirer 108 includes a point of purchase communication module 804, which is configured to communicate with the point of purchase 106 to receive initial authorization requests and transmit authorization or denial messages at the end of the transaction. The acquirer 108 also includes an evaluation module 806, which is configured to evaluate initial authorization requests according to the process 700 described above to determine if initial authorization requests should be sent to the intermediary service 204.

The acquirer 108 also includes an intermediary service communication module 808, which is configured to communicate with the intermediary service 204 to send authorization requests and to receive account information. The intermediary service communication module 808 then provides the account information to an authorization request generator module 810, which is configured to generate a modified authorization request based on the initial authorization request and the received account information. The modified authorization request is then provided to a payment association communication module 812, which is configured to communicate with the payment association 112 to send the modified authorization requests to the issuing institution 110. After the issuing institution 110 approves or denies a transaction, the payment association communication module 812 also receives an authorization or denial message from the payment association 112. The acquirer 108 then forwards the message to the point of purchase 106 and/or the intermediary service 204.

One of the advantages of the disclosed intermediary service 204 is that it allows routing of encrypted messages through the service without revealing sensitive information that is contained in the messages to the operator of the service. FIG. 8 is a block diagram depicting various message routing paths through the intermediary service 204. Complementary encryption keys are depicted as being maintained by different parties that participate in the processing of a financial transaction. For example, a key A that is maintained by acquirer 108 allows the acquirer to encrypt messages and communicate in a secure fashion with the intermediary service 204, which maintains a complementary key A' for decoding the encrypted messages. Similarly the intermediary service 204 maintains a key B' that allows it to communicate in a secure fashion with the mobile device 206, which maintains a complementary key B. Moreover, the intermediary service 204 also maintains a key C' that allows it to communication in a secure fashion with the issuing institution 110, which maintains a key C. Of note, however, is the ability of the acquirer 108 and the issuing institution 110 to exchange encrypted messages or portions of messages through the intermediary service without allowing the service to read or otherwise act on the contents of the messages. For example, certain portions of the point of purchase information from the initial authorization request (e.g., the specific products being purchased) may be encrypted by the acquirer 108 using an encryption key D. When the intermediary services 204 receives messages or portions of messages that are encrypted, the service copies the encrypted messages or portions of messages and forwards the copied messages to the issuing institution 110. The issuing institution 110 is able to decrypt the encrypted message or portion of the message using key D'. Similarly, the issuing institution 110 may encrypt account information using key D so that the information may be read only by the acquirer 108.

US 8,099,368 B2

19

An advantage of this is that the intermediary service **204** never has usable access to the encrypted information. This allows the acquirer to retain control over non-essential customer information, such as certain point of purchase information, and increases the privacy of the information. It also allows the issuing institution to pass certain account information, such as the card number and PIN number of a customer's debit card, to the acquirer **108**, thereby allowing the acquirer to process financial transactions that might not have been previously available to the acquirer (e.g., such as during an online purchase).

From the foregoing, it will be appreciated that specific embodiments of the invention have been described herein for purposes of illustration, but that various modifications may be made without deviating from the invention. For example, those skilled in the art will further appreciate that the depicted flow charts may be altered in a variety of ways. The order of the steps may be rearranged, steps may be performed in parallel, steps may be omitted, or other steps may be included. Accordingly, the invention is not limited except as by the appended claims.

We claim:

**1**. A method for processing financial transaction data in a server including a processor and an associated storage area, the method comprising:

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, wherein the authorization request includes a purchaser identifier, a transaction amount, and information identifying the point of purchase;

authenticating the authorization request;

retrieving customer information associated with the purchaser identifier from the storage area, the customer information including data defining multiple payment instruments and an address associated with a mobile device of the customer;

generating a transaction indication message for transmittal to the mobile device of the customer, the transaction indication message including information about the transaction and specifying a response that allows a selection of a payment instrument from at least two of the multiple payment instruments associated with the customer;

transmitting the transaction indication message to the mobile device using the mobile device address;

receiving a customer confirmation message from the mobile device in response to the transaction indication message, wherein the customer confirmation message includes a selected payment instrument;

obtaining customer account information from an issuing institution, wherein the customer account information includes information associated with the selected payment instrument from the multiple payment instruments associated with the customer, the customer account information including a first part encrypted according to a first encryption method and a second part encrypted according to a second encryption method, the first encryption method and the second encryption method selected such that the server is capable of decrypting the first part and is not capable of decrypting the second part; and

providing the customer account information to the requester in response to determining that the customer confirmation message indicates that the transaction is authorized by the customer.

**2**. The method of claim **1**, wherein the requester is an acquirer.

20

**3**. The method of claim **1**, wherein the requester is an issuing institution.

**4**. The method of claim **1**, wherein the purchaser identifier comprises track **1** data associated with an identification card.

**5**. The method of claim **1**, wherein the authorization request is encrypted such that the purchaser identifier is encrypted using a first encryption method and the information identifying the point of purchase is encrypted using a second encryption method.

**6**. The method of claim **1**, further comprising validating the format of the authorization request.

**7**. The method of claim **1**, wherein the information about the transaction is selected from the group consisting of the transaction amount and the point of purchase identifier.

**8**. The method of claim **1**, wherein the specified response is determined by the transaction amount.

**9**. The method of claim **1**, wherein the specified response is determined by the information identifying the point of purchase.

**10**. The method of claim **1**, wherein:

the customer information further comprises a stored verification code;

the specified response requires a verification code; and

the customer confirmation message further includes a verification code received from the customer.

**11**. The method of claim **10**, further comprising comparing the received verification code to the stored verification code to determine whether the transaction is authorized by the customer.

**12**. The method of claim **1**, wherein the specified response is a transaction approval or rejection, and wherein the customer confirmation message includes information indicating an approval or rejection by the customer.

**13**. The method of claim **1**, wherein the payment instrument is selected from the multiple payment instruments associated with the customer according to a processing rule.

**14**. A system for processing financial transaction data, the system comprising:

a processor;

a storage component;

a requester communication module configured to receive an initial authorization request from a requester, wherein the initial authorization request includes a purchaser identifier and details of an associated purchase transaction;

an authentication module configured to process the authorization request from the requester to authenticate that the request was received from a trusted requester;

a customer management module configured to retrieve customer information from the storage component based on the purchaser identifier, wherein the customer information includes data identifying a mobile device of a corresponding customer and data defining multiple payment instruments;

a mobile device communication module configured to send a transaction notification to the identified mobile device and to receive a customer confirmation message in response to the transaction notification, wherein the transaction notification includes information that allows a customer to select a payment instrument from at least two of the multiple payment instruments, and wherein the customer confirmation message includes a selected payment instrument; and

an issuer communication module configured to communicate with an issuer to obtain account information for a financial account associated with the customer, the account information including a first part encrypted

US 8,099,368 B2

**21**

according to a first encryption method and a second part encrypted according to a second encryption method, the first encryption method and the second encryption method selected such that the system is capable of decrypting the first part and is not capable of decrypting the second part,

wherein the requester communication module is further configured to provide the obtained financial account information to the requester.

**15**. The system of claim **14**, wherein the initial authorization request further includes transaction information and wherein the mobile device communication module is configured to send a first type of transaction notification in response to a first type of transaction information and a second type of transaction notification in response to a second type of transaction information.

**16**. The system of claim **14**, wherein the initial authorization request further includes transaction information including a price and wherein the mobile device communication module is configured to send a first type of transaction notification if the price is greater than a specified threshold and a second type of transaction notification otherwise.

**17**. The system of claim **14**, wherein the customer confirmation message includes a verification code, wherein the mobile device communication module is further configured to compare the received verification code to a stored verification code in the customer information and wherein the issuer communication module is further configured to selectively obtain the account information based on the comparison.

**18**. The system of claim **14**, wherein the initial authorization request includes a first section encrypted using a first encryption method and a second section encrypted using a second encryption method.

**19**. The system of claim **14**, wherein the communication with the issuer includes data indicating a selected individual payment instrument.

**20**. The system of claim **19**, wherein the individual payment instrument is selected based on the purchaser identifier or customer information.

**21**. A method for processing financial transaction data in a server including a processor and a memory, the method comprising:

by the processor, receiving an initial authorization request to receive credit for purposes of a transaction, wherein the initial authorization request includes transaction information and a customer identifier;

retrieving customer information from the memory based on the customer identifier, wherein the customer information includes payment instrument information defining multiple payment instruments and customer device information specifying a contact address associated with a customer device;

sending a transaction notification to the contact address associated with the customer device, wherein the transaction notification includes data from the transaction information and information that allows a consumer to

**22**

select a payment instrument from at least two of the multiple payment instruments associated with the customer;

receiving a confirmation message from the customer device, wherein the confirmation message includes a selection of an individual payment instrument from the multiple payment instruments, and

generating an information request to receive account information for a payment instrument based on the initial authorization request, the customer information, and the selected individual payment instrument;

sending the information request to an issuer;

receiving account information from the issuer, the account information including a first part encrypted according to a first encryption method and a second part encrypted according to a second encryption method, the first encryption method and the second encryption method selected such that the server is capable of decrypting the first part and is not capable of decrypting the second part; and

providing the account information to a requester.

**22**. The method of claim **21**, wherein sending a transaction notification comprises sending a first type of transaction notification in response to a first type of transaction information and sending a second type of transaction notification in response to a second type of transaction information.

**23**. The method of claim **21**, wherein the transaction information includes a price and wherein sending a transaction notification comprises sending a first type of transaction notification if the price is greater than a specified threshold and sending a second type of transaction notification otherwise.

**24**. The method of claim **21**, wherein the confirmation message includes an authorization code.

**25**. The method of claim **21**, wherein the confirmation message includes a verification code; and further comprising comparing the received verification code to a stored verification code in the customer information,

wherein the information request is generated based on the comparison.

**26**. The method of claim **21**, wherein the customer identifier is an identification number received from a radio frequency identification (RFID) tag or a module in a mobile device supporting near field communications (NFC).

**27**. The method of claim **21**, wherein the account information is encrypted such that the information can only be read by the requester.

**28**. The method of claim **21**, wherein the initial authorization request includes a first section encrypted using a first encryption method and a second section encrypted using a second encryption method.

**29**. The method of claim **21**, wherein the initial authorization request includes a merchant identifier, and wherein generating the second authorization request further comprises:

selecting a payment instrument of the multiple payment instruments based in part on the merchant identifier, wherein the generated second authorization request includes the selected payment instrument.

* * * * *

# EXHIBIT B

# US 8,099,368 B2 Claim chart
## vs
## TSYS (Payment Solutions)

# Global Payments (and subsidiaries) PAN Tokenization Public Announcements / Timeline



852-patent PAN Tokenization stat date

https://patents.google.com/patent/US9292852B2/en?inventor=todd+r+coulter&oq=todd+r+coulter

DEC 8, 2008

2008

TSYS Executes FonWallet NDA

VISA / MasterCard start token vault / services
https://www.cybersource.com/en-us/blog/2018/bringing-our-tms-service-to-clients.html

2012

Global Payments (Heartland)
https://paymentsafrika.com/heartland-payment-systems-and-levelup-launch-mobile-payments-across-usa/

2013

Global Payments (EVO)
https://www.evosnap.com/evo-unveils-integrated-strategy-for-emv-names-handpoint-as-early-mover-partner/

2014

Global Payments (Xenial)
https://www.xenial.com/solutions/payments/

2015

EMVco starts PAN tokenization Services
https://www.emvco.com/emv-technologies/payment-tokenisation/

2016

Global Payments (TSYS)
https://www.businesswire.com/news/home/20170530005164/en/TSYS-Enables-Tokenization-for-Commercial-Card-Issuers

2017

# U.S. Patent No. US 8,099,368

## US8099368B2
United States

📄 **Download PDF**   🔍 **Find Prior Art**   Σ **Similar**

**Inventor:** Todd R. Coulter, Mordechai E. Kaplinsky, Christopher E. Lewis

**Current Assignee :** Authwallet LLC

**Worldwide applications**

2009 · ~~US~~ US

**Application US12/557,457 events** ⑦

| | |
|---|---|
| | • US case filed in California Northern District Court ⑦ |
| | ▫ US case filed in Texas Southern District Court ⑦ |
| | ▫ US case filed in Texas Northern District Court ⑦ |
| | ▫ US case filed in Texas Northern District Court ⑦ |
| **2008-11-08** | • Priority to US11274908P |
| **2009-09-10** | • Application filed by FonWallet Transaction Solutions Inc |
| 2009-09-10 | ▫ Priority to US12/557,457 |
| 2009-11-06 | ▫ Priority claimed from PCT/US2009/063641 |
| 2010-03-24 | ▫ Assigned to FONWALLET TRANSACTION SOLUTIONS, INC. ⑦ |
| **2010-05-13** | • Publication of US20100121767A1 |
| 2010-08-18 | ▫ Priority claimed from US12/859,203 |
| 2010-08-18 | ▫ Priority claimed from US12/859,205 |
| 2010-08-18 | ▫ Priority claimed from US12/859,213 |
| **2012-01-17** | • Publication of US8099368B2 |
| **2012-01-17** | • Application granted |
| 2020-03-06 | ▫ Assigned to AUTHWALLET LLC ⑦ |
| 2022-02-08 | ▫ Assigned to AUTHWALLET LLC ⑦ |
| 2022-08-12 | ▫ US case filed in Texas Northern District Court ⑦ |
| **Status** | • Active |
| **2029-09-10** | ▫ Anticipated expiration |

# Related Products

- The following solutions chart is based on TSYS Developer -



https://developerportal.transit-pass.com/developerportal/resources/dist/#/home

4

# Related Products II

- The following solutions chart is based on TSYS issuer solutions



https://www.tsys.com/platform

5

# US 8,099,368 : Claim 1

1.  A method for processing financial transaction data in a server including a processor and an associated storage area, the method comprising:

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, wherein the authorization request includes a purchaser identifier, a transaction amount, and information identifying the point of purchase;

authenticating the authorization request;

retrieving customer information associated with the purchaser identifier from the storage area, the customer information including data defining multiple payment instruments and an address associated with a mobile device of the customer;

generating a transaction indication message for transmittal to the mobile device of the customer, the transaction indication message including information about the transaction and specifying a response that allows a selection of a payment instrument from at least two of the multiple payment instruments associated with the customer;

transmitting the transaction indication message to the mobile device using the mobile device address;

receiving a customer confirmation message from the mobile device in response to the transaction indication message, wherein the customer confirmation message includes a selected payment instrument;

obtaining customer account information from an issuing institution, wherein the customer account information includes information associated with the selected payment instrument from the multiple payment instruments associated with the customer, the customer account information including a first part encrypted according to a first encryption method and a second part encrypted according to a second encryption method, the first encryption method and the second encryption method selected such that the server is capable of decrypting the first part and is not capable of decrypting the second part; and

providing the customer account information to the requester in response to determining that the customer confirmation message indicates that the transaction is authorized by the customer.

# US **8,099,368** : Claim 1

| | |
|---|---|
| 1. A method for processing financial transaction data in a server including a processor and an associated storage area, the method comprising: | Plaintiff contends that TSYS Payment Solutions includes the acquiring and issuing of financial transaction data in a server, **such as a mobile payment, authentication, rewards, loyalty, point-of-sale payments & tokenized transaction information etc.,** these require processors & storage servers. A token is described in the specification as: "*As used herein, "token" is a generic term that refers to various means for providing the unique identifying information to the merchant 106. For example, a token may be a magnetic strip on a credit or debit card, a radio frequency identification (RFID) tag embedded in a card or mobile device, an optical pattern that is scanned by a scanner (e.g., a bar code) or similar or different technologies for conveying identifying information to the merchant.*" Col:5 Row 45-53 '368 patent |



7

# US **8,099,368** : Claim 1

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, wherein the authorization request includes a purchaser identifier, a transaction amount, and information identifying the point of purchase;

**TSYS receives an authorization request from a requester (acquirer or issuer) after a customer has initiated an identification card purchase (ISO/IEC 7813). An authorization request is formally known as an ISO – 8583 & includes the payment details, purchaser identifier, BIN#, amount, store & POS terminal ID and other transactional identification card track data details. Here is TSYS code and links for their authorization requests.**



https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FCreditServices%2FAuth%2Findex.html

8

# US 8,099,368 : Claim 1

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, **wherein the authorization request includes a purchaser identifier**, a transaction amount, and information identifying the point of purchase;

**The authorization request (ISO-8583) includes a purchaser identifier in Track 1 data fields, it also includes personal information of the card owner and various other transactional and card owner details. The purchaser of the card presented needs verified that its their card. Various techniques are used depending on situation to ID the card owner and verify the auth request – at every stage of processing. Here is TSYS code and link**





https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FCreditServices%2FAuth%2Findex.html

9

# US **8,099,368** : Claim 1

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, wherein the authorization request includes a purchaser identifier, **a transaction amount**, and information identifying the point of purchase;

The **authorization request (ISO 8583) includes a transaction amount that is necessary for the card issuer to know before deciding to accept / approve / deny  the requested transaction. Here is TYSY code and link.**



# US **8,099,368** : Claim 1

receiving from a requester an authorization request generated as a result of a transaction at a point of purchase, wherein the authorization request includes a purchaser identifier, a transaction amount, **and information identifying the point of purchase;**

The **authorization request (ISO-8583) track data includes information identifying the merchant point of purchase (POS) down to the specific store terminal used. Here TSYS defines ALL aspects of the specific POS used in each transaction. Here is TSYS code and link.**



# US **8,099,368** : Claim 1

| authenticating the authorization request; | **When a customer makes a financial card purchase, the transaction must not only be authenticated with the consumer but also the card is authenticated by all parties (i.e., merchant, acquirer, processor, association, issuer etc.,) within the card processing chain. This section on TSYS developer web site explains "Card authentication Keyed Transaction".** |
|---|---|

### CardAuthentication Keyed Transaction

#### CardAuthentication Request

These are the fields that comprise a CardAuthentication for a keyed transaction.
Code examples are available for XML and JSON.
For field descriptions, see Field Definitions.

**Sample Request**

#### CardAuthentication Response

These are the fields that comprise a CardAuthentication Response:
Code examples are available for XML and JSON.
For field descriptions, see Field Definitions.

**Sample Response**

### CardAuthentication Request - Swiped / NFC Transaction

#### CardAuthentication Swiped and NFC Request

The fields that comprise a CardAuthentication for a swiped or NFC transaction are:
Code examples are available for XML and JSON.
For field descriptions, see Field Definitions.

**Sample Request**

#### CardAuthentication Swiped and NFC Response

These are the fields that comprise a CardAuthentication Response:
Code examples are available for XML and JSON.
For field descriptions, see Field Definitions.

https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FCreditServices%2FCardAuthentication%2Findex.html%23card-authentication

12

# US **8,099,368** : Claim 1

retrieving customer information associated with the purchaser identifier from the storage area, the customer information including data defining multiple payment instruments and an address associated with a mobile device of the customer;

**Stored customer information can be retrieved from the TSYS data bases and accessed and verified by an API info request. Such as card owner name, card owner address, available payment method used / card details,  email address, contact device /number/address etc.,**

**Authorized Card Signer = Purchaser Identifier.  Here is TSYS code and link**





# US **8,099,368** : Claim 1

**generating a transaction indication message for transmittal to the mobile device of the customer**, **the transaction indication message including information about the transaction** and specifying a response that allows a selection of a payment instrument from at least two of the multiple payment instruments associated with the customer;

**TSYS enables generation and customization of transaction messages including indication messages to all devices. TransIT API 3.0 file specifications describe the messaging format for the TransIT platform. This link below includes all required responses, a selection of different currency payment types and available customer payment methods specific to each customer.**



https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FDigitalWallet%2Findex.html

14

# US **8,099,368** : Claim 1

**generating a transaction indication message for transmittal to the mobile device of the customer**, **the transaction indication message including information about the transaction** and specifying a response that allows a selection of a payment instrument from at least two of the multiple payment instruments associated with the customer;

**TSYS enables generation and customization of transaction messages including indication messages to all devices. TransIT API 3.0 file specifications describe the messaging format for the TransIT platform. This link below includes all required responses, a selection of different currency payment types and available customer payment methods specific to each customer.**



https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FDigitalWallet%2Findex.html

# US **8,099,368** : Claim 1

generating a transaction indication message for transmittal to the mobile device of the customer, the transaction indication message including information about the transaction **and specifying a response that allows a selection of a payment instrument from at least two of the multiple payment instruments associated with the customer;**

**TSYS enables generation and customization of transaction messages including indication messages to all devices. TransIT API 3.0 file specifications describe the messaging format for the TransIT platform. This link below includes all required responses, a selection of different currency payment types and available customer payment methods specific to each customer.**



16

# US **8,099,368** : Claim 1

transmitting the transaction indication message to the mobile device using the mobile device address;

**The transaction indication message is transmitted to the mobile device (i.e., tablet, laptop, wifi enable desktop, watch, ear plugs etc.,) using the mobile devices MAC / POTS / IP address.**



https://developerportal.transit-pass.com/developerportal/resources/dist/#/api-specs/.%2Fassets%2Fbuild%2Fapi%2FAPI3.0%2FResponseCodes%2Findex.html%23

17

# US **8,099,368** : Claim 1

receiving a customer confirmation message from the mobile device in response to the transaction indication message, wherein the customer confirmation message includes a selected payment instrument;

Here is a TSYS mobile payments demo video, found at link below, describing their mobile payments process for their underlying banks / customers. TSYS builds these apps via Cayan (slide 4).

TSYS receives the customer confirmation message including the selected payment method and details on the transaction at approx. 1:28 into TSYS video.



https://www. youtube.com /watch?v=QQ Y0IbysDDM



**Mobile Payments Setup Demo**

 **TSYS Merchant Solutions**
1.06K subscribers

Subscribe

 3       Share    Download   ···

# US **8,099,368** : Claim 1

**obtaining customer account information from an issuing institution, wherein the customer account information includes information associated with the selected payment instrument from the multiple payment instruments associated with the customer**,

On the TSYS developer site the issuer response code details the received information returned to TSYS from the card issuer.

This **customer account information** includes the information regarding the payment method used for that specific transaction (i.e. card track data).

▸ **foreign**  object

Container for foreign transaction related information

**originalCardLast4**  string

Original account number used when transaction was completed.

**debitCreditFlag**  string

Indicates whether the transaction is a debit or a credit.

**referenceNumber**  string

Acquirer reference number (ARN) for the transaction.

▸ **transactionAmount**  object

Monetary amount of the transaction in the settlement currency.

▸ **sourceAmount**  object

Monetary amount of the original transaction.

**statementBeginDate**  string

Ending date of the statement for which the transaction cycle was created. Format: YYYY-MM-DD.

| Date Pattern | YYYY-MM-DD |
| --- | --- |

```
        value: "string",
        currency: "string"
      },
      conversionRate: "number",

    },
    originalCardLast4: "string",
    debitCreditFlag: "string",
    referenceNumber: "string",
    transactionAmount:
    {
      value: "string",
      currency: "string"
    },
    sourceAmount:
    {
      value: "string",
      currency: "string"
    },
    statementBeginDate: "string"
  }
],
exceedsMaxTransactions: "string"
}
```

https://developers.tsys.com/api/product?key=Digital+Commercial+Services

19

# US **8,099,368** : Claim 1

| | |
|---|---|
| the customer account information including a **first part encrypted according to a first encryption method** | Plaintiff contends that any entity that handles a PAN (Personal Account Number, i.e. Credit Card Number) must either use a "**one-way hash, an index token or strong encryption when storing a PAN**" in non-volatile memory. This section also refers to this document for standards involving Index tokens. Annex D.2 of this document illustrates that even when Tokens are used to enhance the security of the PAN, every Requesting Entity in the chain from Merchant to Settlement MUST handle the PAN directly at some point. They are therefore required to use "**a one-way hash or strong encryption**" when handling the PAN. |

## TSYS

### PCI Compliance

The Payment Card Industry (PCI) Security Standards Council is comprised of the major credit card associations (Visa, MasterCard, American Express, Discover and Japan Card).

They have established a set of security standards to ensure that merchants and service providers follow best practices in order to reduce credit card fraud and security breaches. By accepting VISA and MasterCard payments, merchants and service providers are required to become Payment Card Industry compliant.



https://merchantpci.tsys.com/

In Section 3.5.1 of the (PCI-DSS-v4_0.pdf Page 91 of 360):
"PAN is rendered unreadable anywhere it is stored by using any of the following approaches:

• One-way hashes based on strong cryptography of the entire PAN.
• Index tokens.
• Strong cryptography with associated key-management processes and procedures."

https://webstore.ansi.org/preview-pages/ASCX9/preview_ANSI+X9.119-1-2016.pdf



https://web.archive.org/web/20240000000000*/https://docs-prv.pcisecuritystandards.org/PCI%20DSS/Standard/PCI-DSS-v4_0.pdf

# US **8,099,368** : Claim 1

| the customer account information including a **first part encrypted according to a first encryption method** | **Plaintiff contends that the protection of the PAN is extended with a one-way hash or strong encryption "The PAN digits 1 through 19 SHALL be protected when transmitted, processed, or stored as a single data field (i.e., not parsed into sub-fields) outside of an SCD."** Therefore, plaintiff contends that any entity that handles a card transaction with a PAN must use a **form of encryption to secure the PAN at all times 'a first part encrypted according to a first encryption method' corresponds to the PAN encryption method.** |
|---|---|

• ANSI X9.119-1-2016- Part 1 - Requirements for Protection of Sensitive Payment Card Data – Part 1: Using Encryption Methods.

In Section 6.2.2 of https://webstore.ansi.org/preview-pages/ASCX9/preview_ANSI+X9.119-1-2016.pdf

 - Part 1 states that: "The PAN digits 1 through 19 SHALL be protected when transmitted, processed, or stored as a single data field (i.e., not parsed into sub-fields) outside of an SCD."

https://webstore.ansi.org/preview-pages/ASCX9/preview_ANSI+X9.119-1-2016.pdf



American National Standard for Financial Services

ANSI X9.95-2012

https://webstore.ansi.org/preview-pages/ASCX9/preview_ANSI+X9.95-2012.pdf

# US **8,099,368** : Claim 1

| | |
|---|---|
| *and a second part encrypted according to a second encryption method,* | Plaintiff contends that the PAN transmission protocols do not use the same encryption methodology to encrypt the data transmission as used to encrypt the PAN:  **"4.2.1 Strong cryptography and security protocols are implemented as follows to safeguard PAN during transmission over open, public networks:"** (examples of this include but are not limited to, the use of SSH, SFTP, HTTPS, SMTPS and other encrypted protocols for the transmission of the PAN between servers.)  Therefore **'a second part encrypted according to a second encryption method'** corresponds to the **protocol encryption and is not the same as** the **PAN encryption method.** |

Section 4 - Overview of the PCI-DSS (Page 106 of 360) states:

"PAN transmissions can be protected by encrypting the data before it is transmitted, or by encrypting the session over which the data is transmitted, or both. While it is not required that strong cryptography be applied at both the data level and the session level, it is recommended."

Section 4.2 of the PCI-DSS (Page 109 of 360) specifically requires that the PAN is protected with strong encryption during transmission
 "4.2.1 Strong cryptography and security protocols are implemented as follows to safeguard PAN during transmission over open, public networks:

"Only trusted keys and certificates are accepted.  Certificates used to safeguard PAN during transmission over open, public networks are confirmed as valid and are not expired or revoked. This bullet is a best practice until its effective date; refer to applicability notes below for details.  The protocol in use supports only secure versions or configurations and does not support fallback to, or use of insecure versions, algorithms, key sizes, or implementations.  The encryption strength is appropriate for the encryption methodology in use."

https://www.commerce.uwo.ca/pdf/PCI-DSS-v4_0.pdf



https://web.archive.org/web/20240000000000*/https://docs-prv.pcisecuritystandards.org/PCI%20DSS/Standard/PCI-DSS-v4_0.pdf

22

# US **8,099,368** : Claim 1

| | |
|---|---|
| the first encryption method and the second encryption method selected such that the server is capable of decrypting the first part and is not capable of decrypting the second part; and | Plaintiff contends that **the transmission of sensitive data** is **not handled by the same servers** that store such data and that the edge servers that handle the **transmission of data** between external entities and the issuing institution **do NOT** have the capability of decrypting the PAN that is being transmitted over an encrypted protocol, "**Primary functions with differing security levels that exist on the same system component are isolated from each other,**" Therefore '**the first encryption method and the second encryption method selected such that the server is capable of decrypting the first part and is not capable of decrypting the second part**'. |

In Section 2.2.3 of the PCI-DSS (Page 69 of 360):

"Primary functions requiring different security levels are managed as follows:

   • Only one primary function exists on a system component,
   OR
   • **Primary functions with differing security levels that exist on the same system component are isolated from each other,**
   OR
   • Primary functions with differing security levels on the same system component are all secured to the level required by the function with the highest security need."

https://www.commerce.uwo.ca/pdf/PCI-DSS-v4_0.pdf

https://docs-prv.pcisecuritystandards.org/PCI DSS/Standard/PCI-DSS-v ✕

·  Changes   ·   Summary   ·   Site Map   ·   URLs

ween July 22, 2022 and March 22, 2024.

2012  2013  2014  2015  2016  2017  2018  2019  2020  2021  2022  2023  **2024**

# US **8,099,368** : Claim 1

**providing the customer account information to the requester in response to determining that the customer confirmation message indicates that the transaction is authorized by the customer.**

**Plaintiff contends TSYS source code below enables customer account information to be sent to the requester ( issuer or acquirer). Authorization can be approved by the card holder / customer / purchaser identifier by pin#, biometric, location, or other means.**

▼ **identifiers**  object

Returns the path parameter(s) which will contain the accountId, cardLast4 or customerId.

**customerId**  string

A unique combination of numbers that, when used with the accountId, identifies the customer that is associated with the account.

**accountId**  string

Unique identifier assigned to the account.

**cardLast4**  string

Last 4 digits of the customer's account or card number.

https://developers.tsys.com/api/product?key=Payments

24

# EXHIBIT C

Case 1:24-cv-03547-VMC Document 1 Filed 08/08/24 Page 62 of 99

US009292852B2

## (12) United States Patent
Coulter et al.

(10) Patent No.: **US 9,292,852 B2**
(45) Date of Patent: **Mar. 22, 2016**

(54) **SYSTEM AND METHOD FOR APPLYING STORED VALUE TO A FINANCIAL TRANSACTION**

(75) Inventors: **Todd R. Coulter**, Rancho Murieta, CA (US); **Mordechai E. Kaplinsky**, Brooklyn, NY (US); **Christopher E. Lewis**, Tempe, AZ (US); **Jeffery A. Warmington**, Wellington, FL (US)

(73) Assignee: **FonWallet Transactions Solutions, Inc.**, Rancho Murieta, CA (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 340 days.

(21) Appl. No.: **12/859,213**

(22) Filed: **Aug. 18, 2010**

(65) **Prior Publication Data**
US 2010/0312636 A1 Dec. 9, 2010

### Related U.S. Application Data

(63) Continuation-in-part of application No. 12/557,457, filed on Sep. 10, 2009, now Pat. No. 8,099,368.

(60) Provisional application No. 61/112,749, filed on Nov. 8, 2008.

(51) **Int. Cl.**
*G06Q 20/00* (2012.01)
*G06Q 20/42* (2012.01)
(Continued)

(52) **U.S. Cl.**
CPC ............... *G06Q 20/42* (2013.01); *G06Q 20/10* (2013.01); *G06Q 20/20* (2013.01); *G06Q 20/32* (2013.01); *G06Q 20/322* (2013.01); *G06Q 20/40* (2013.01);
(Continued)

(58) **Field of Classification Search**
CPC .................................................... G06Q 20/00

USPC ........................................................ 705/67
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

6,999,943 B1 2/2006 Johnson et al.
7,357,310 B2 4/2008 Calabrese et al.
(Continued)

FOREIGN PATENT DOCUMENTS

JP 2007018043 A * 1/2007
JP 2011-118898 A 6/2011

OTHER PUBLICATIONS

International Search Report and Written Opinion for PCT/US09/63641; Applicant: FonWallet Transaction Solutions, Inc.; Mailing Date: Dec. 15, 2009, 8 pages.
(Continued)

*Primary Examiner* — James A Reagan

(57) **ABSTRACT**

A transaction processing service operates as an intermediary between acquirers of financial transaction requests and issuing institutions that process the financial transaction requests. The intermediary receives an authorization request generated based on a transaction initiated by a customer at a point of purchase. The intermediary service then determines one or more stored value items that can be applied to the transaction. Stored value items may be determined based on the customer's identity or based on transaction characteristics, such as the point of purchase or the transaction items. The service sends a transaction notification to a mobile device associated with the customer to notify the customer of the available stored value items. The service then applies the stored value items to pay a portion of the transaction amount and initiates a payment process to pay the remainder of the transaction amount.

**40 Claims, 18 Drawing Sheets**



US 9,292,852 B2

Page 2

(51) **Int. Cl.**
     *G06Q 20/10*     (2012.01)
     *G06Q 20/20*     (2012.01)
     *G06Q 20/32*     (2012.01)
     *G06Q 20/40*     (2012.01)
     *G06Q 30/02*     (2012.01)
     *G06Q 40/02*     (2012.01)

(52) **U.S. Cl.**
     CPC ............ *G06Q 30/02* (2013.01); *G06Q 30/0238* (2013.01); *G06Q 40/02* (2013.01)

(56) **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2002/0138445 | A1 | 9/2002 | Laage et al. |
| 2002/0143634 | A1 | 10/2002 | Kumar et al. |
| 2003/0216996 | A1 | 11/2003 | Cummings et al. |
| 2004/0230525 | A1* | 11/2004 | Barsade et al. ................. 705/40 |
| 2005/0222949 | A1 | 10/2005 | Inotay et al. |
| 2005/0251440 | A1* | 11/2005 | Bednarek ........................ 705/10 |
| 2008/0010191 | A1 | 1/2008 | Rackley, III et al. |
| 2008/0010215 | A1 | 1/2008 | Rackley, III et al. |
| 2008/0172317 | A1 | 7/2008 | Deibert et al. |
| 2008/0288351 | A1* | 11/2008 | Leung et al. .................... 705/14 |
| 2009/0192904 | A1 | 7/2009 | Patterson et al. |
| 2009/0325542 | A1 | 12/2009 | Wentker et al. |
| 2010/0121726 | A1 | 5/2010 | Coulter et al. |
| 2010/0121767 | A1 | 5/2010 | Coulter et al. |
| 2010/0312657 | A1 | 12/2010 | Coulter et al. |
| 2010/0312700 | A1 | 12/2010 | Coulter et al. |

## OTHER PUBLICATIONS

Non-Final Office Action, U.S. Appl. No. 12/859,205, Mail Date Nov. 7, 2011, 21 pages.
Final Office Action, U.S. Appl. No. 12/557,453, Mail Date Mar. 30, 2011, 19 pages.
Final Office Action, U.S. Appl. No. 12/557,457, Mail Date Apr. 27, 2011, 17 pages.
Krueger, Malte. The Future of M-payments—Business Options and Policy Issues—Background Paper No. 2 Electronic Payment Systems Observatory (ePSO) (Aug. 2011), retrieved online Sep. 29, 2011 at http://ftp/jrc.es/EURdoc/eur19934en.pdf, 33 pages.
Non-Final Office Action, U.S. Appl. No. 12/557,457, Mail Date Sep. 28, 2010, 24 pages.
Non-Final Office Action, U.S. Appl. No. 12/557,453, Mail Date Oct. 5, 2010, 16 pages.
Notice of Allowance, U.S. Appl. No. 12/557,457, Mail Date Oct. 12, 2011, 17 pages.
Final Office Action, U.S. Appl. No. 12/859,205, Mail Date Jun. 13, 2012, 9 pages.
Non-Final Office Action, U.S. Appl. No. 12/859,203, Mail Date Feb. 8, 2012, 5 pages.
Notice of Allowance, U.S. Appl. No. 12/557,453, Mail-Date Apr. 3, 2012, 19 pages.
Notice of Allowance, U.S. Appl. No. 12/859,203, Mail-Date Apr. 27, 2012, 5 pages.
Notice of Allowance, U.S. Appl. No. 12/859,205, Mail-Date Oct. 9, 2012, 18 pages.

\* cited by examiner



**FIG. 1**
**Prior Art**



**FIG. 2A**



*FIG. 2B*



**FIG. 2C**



*FIG. 3B*



*FIG. 3A*



*FIG. 3D*



*FIG. 3C*

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 70 of 99



*FIG. 4*



*FIG. 5*



*FIG. 6A*



***FIG. 6B***



**FIG. 6C**



**FIG. 6D**



**FIG. 6E**



**FIG. 7**

Case 1:24-cv-03547-VMC   Document 1   Filed 08/09/24   Page 78 of 99



*FIG. 8*



FIG. 9



**FIG. 10A**



**FIG. 10B**

US 9,292,852 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**SYSTEM AND METHOD FOR APPLYING STORED VALUE TO A FINANCIAL TRANSACTION**

CROSS-REFERENCE TO RELATED APPLICATIONS

This application is a continuation-in-part of U.S. patent application Ser. No. 12/557,457 filed Sep. 10, 2009 now U.S. Pat. No. 8,099,368, entitled "Intermediary Service and Method for Processing Financial Transaction Data with Mobile Device Confirmation," which claims the benefit of U.S. Provisional Application No. 61/112,749, entitled "Mobile Card Access & Authorization," filed on Nov. 8, 2008.

BACKGROUND

Companies that participate in electronic transaction systems (e.g., transaction systems that process credit cards, debit cards, etc.) must balance a number of competing concerns in their interactions with the systems. As businesses, companies must track their costs in dealing with transaction systems. For example, merchants who accept credit cards are subject to various fees when processing transactions. Merchants may therefore decide to accept certain credit cards and reject others, or require a minimum charge amount when accepting a card for payment, in order to reduce fees. In addition, merchants must track and make policy decisions about how they use and protect personal information associated with transactions. Government regulations and private contracts (e.g., with the credit card associations) set privacy and security requirements that banks and merchants must satisfy. The privacy and security requirements place limits on data security and encryption and also limit the types of data that can be transmitted using different formats. These concerns are interrelated because participants in the system pay lower fees when more customer information is provided with the transaction information. Fees are lower because the additional customer information can generally be retrieved only from the physical card itself, indicating that the card was present at the time of the transaction. Thus, a purchase at a brick-and-mortar business is charged a lower processing fee than a purchase on the Internet, because the brick-and-mortar business is able to transmit more customer information to the credit card company.

Consumers also balance competing concerns. Avoiding losses from fraudulent or erroneous transactions is a particular concern. Currently, some issuing institutions use automated systems that attempt to detect and reject suspicious transactions based on transaction characteristics (e.g., location, amount, etc.). However, these automated systems are often unsuccessful in differentiating legitimate transactions and fraudulent transactions. Otherwise, consumers can generally detect fraudulent or erroneous transactions only by reviewing their bill or statement to verify that every transaction is correct. Reviewing bills is inconvenient because it requires continual vigilance from the consumer. In addition, several days or weeks may pass before an erroneous or fraudulent transaction is detected. Thus, it would be useful to have payment systems that enable consumers to more efficiently detect these incorrect transactions.

Convenience is also a major concern for consumers. The average consumer may pay for purchases using multiple payment instruments, such as credit cards, debit cards, and gift cards. Each payment instrument has a separate card or token and a separate set of identifying information, such as credit/debit card numbers, that must be tracked. Managing multiple payment instruments can therefore be complicated and cumbersome. Thus, it would be useful to consumers to be able to manage multiple payment instruments in a simple fashion.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a block diagram of a representative environment for processing financial transaction data according to prior art methods.

FIG. **2**A is a block diagram that illustrates communication steps for sending an authorization request to an intermediary service.

FIG. **2**B is a block diagram that illustrates a two-step authorization process performed by the intermediary service.

FIG. **2**C is a block diagram that illustrates a process for authorizing a transaction using a modified authorization request.

FIGS. **3**A-**3**D are representative user interfaces presented to a customer of a mobile device during a financial transaction.

FIG. **4** is a block diagram of a representative server architecture.

FIG. **5** is a logical block diagram of the intermediary service.

FIGS. **6**A and **6**B are a flow chart of a process for processing financial transaction data executed by an intermediary service.

FIG. **6**C is a flow chart of a process for defining rules to be executed by the intermediary service.

FIG. **6**D is a flow chart of a process for processing rules by the intermediary service.

FIG. **6**E is a flow chart of a process for processing stored value by the intermediary service.

FIG. **7** is a flowchart of a process for processing financial transaction data executed by an acquirer.

FIG. **8** is a logical block diagram of the acquirer.

FIG. **9** is a block diagram of encrypted message routing through the intermediary service.

FIG. **10**A is a flowchart of a process for selectively activating or deactivating an account through the intermediary service.

FIG. **10**B is a flowchart of a process for handling an authorization request by an issuing institution.

DETAILED DESCRIPTION

A transaction processing service that operates as an intermediary between acquirers of financial transaction requests and issuing institutions that process the financial transaction requests is disclosed (hereinafter referred to as "the intermediary service" or "the service"). The intermediary communicates with an acquirer to provide account information that can be used by the acquirer to process the financial transaction requests. The intermediary service utilizes a customer's mobile device as an out-of-band communication channel to notify a customer of a received financial transaction request. In certain circumstances, before continuing to process the received financial transaction request the service must first receive the customer's confirmation of the transaction. By seeking out-of-band confirmation from a customer to a transaction, the disclosed intermediary service thereby significantly reduces the occurrence of fraud without changing or otherwise burdening standard merchant payment processes.

To initiate a transaction, a customer presents a card or token containing unique identifying information to a merchant in order to pay for a purchase. The token may be, for example, an RFID tag or other contactless device for providing the unique

| 3 | 4 |

identifying information and may be contained in or attached to the customer's mobile device. The merchant transmits the unique identifying information to an acquirer (i.e., a financial institution that provides a clearinghouse service for consolidating financial transactions) in an initial authorization request. The acquirer recognizes that the initial authorization request is associated with the intermediary service based on the unique identifying information, and transmits at least part of the initial authorization request to the intermediary service. The intermediary service authenticates the request and retrieves stored customer information from a database based on the identifying information. The stored customer information includes an address of the customer's mobile device, a reference to one or more payment instruments associated with the customer, and a verification code associated with the customer's intermediary service account.

Using the retrieved address of the device, the intermediary service transmits a transaction notification message to the customer's mobile device. The transaction notification message may include the name or location of the point of purchase, the transaction amount, a listing of payment instruments that may be used to pay for the transaction, and/or other pertinent characteristics of the transaction. The transaction notification message may also specify a required response from the customer. The required response may vary depending on the requesting merchant, the type of transaction, the amount of the transaction, or other factor associated with the transaction (e.g., the type of goods or services being sold, an assessment of the likelihood of fraud, etc.). For example, a low-price transaction may require no response, a higher value transaction may require that the customer confirm the transaction, and a still higher value transaction may require that the customer confirm the transaction and provide a verification code in response to the transaction notification message. The transaction notification message is presented to the customer on the mobile device. The intermediary service may also support fallback methods for transmitting the transaction notification message to the customer in the event that the primary method of sending the message to the customer is not available.

If a response is required from the customer, the customer's response is received by the mobile device and transmitted to the intermediary service. The intermediary service continues processing of the initial authorization request based on the customer's response. If the customer fails to respond to the transaction notification message, rejects the transaction, or provides an incorrect verification code, the intermediary service sends a denial message to the acquirer and the transaction fails.

If the customer authorizes the transaction by confirming the transaction, or confirming the transaction and providing a correct verification code, the intermediary service transmits an information request to the issuing institution of a payment instrument that is to be used to complete the transaction. In response to the request, the issuing institution provides account information for the selected payment instrument. The intermediary service forwards the account information to the acquirer, which generates a modified authorization request based on the received account information. The acquirer then sends the modified request to the associated payment association in accordance with its standard practices. By providing the account information to generate the modified authorization request, the intermediary service allows a customer to easily select among multiple payment instruments while using a single token or identifier at the time of payment. In addition, the provided account information may include additional verification that enables the payment association to process the transaction with a lower fee.

In some embodiments, the intermediary service may maintain a record of a set of payment instruments that are available to each customer for purposes of a transaction. One or more payment instruments may be automatically selected for each transaction based on rules that are defined by the intermediary service, by the customer, or by the merchant. Alternatively, a customer may be allowed to select a payment instrument from a list of payment instruments that are provided in a transaction notification message that is transmitted by the service to the customer. The selected payment instrument or payment instruments determine the issuing institution or institutions to which the intermediary service sends the information request.

The intermediary service may also provide a rules module that stores a set of rules for processing transactions. Each rule specifies one or more conditions to be tested and one or more actions to be executed based on the tests. For each authorization request, the service determines the applicable rules to apply and tests conditions for each rule. Based on the test results, the service either executes or does not execute an associated action. Conditions may be specified based on transaction information, customer information, or other information. For example, a rule might specify a condition to test whether the transaction value is above a threshold value that requires special handling. Actions define the service's response to a particular result in testing a condition. To continue the previous example, the rule may include an action to specify a verification procedure to carry out when the transaction value exceeds the threshold value.

Some rules apply to all transactions, regardless of the customer initiating the transaction, while other rules apply to transactions from specified groups of accounts. Rules may be specified by any participant in the transaction chain, including the customer, the merchant, the issuing institution, and the intermediary service, or by a combination of rules from one or more of these parties.

The intermediary service may also provide functionality to store value for the benefit of customers. As used herein, "stored value" refers to any type of value stored by the intermediary service that can be used to pay a portion of a transaction. A "stored value item" is a particular unit of stored value that may be applied to a transaction. Each stored value item has an associated value, which may be stored as a currency amount measured in a US or foreign monetary unit (e.g., $1.95, €4) or as a percentage of a transaction amount (e.g., a 10% off coupon)). The value may also be denominated in non-currency units (e.g., "points") that can be converted to a currency value using a conversion rate at the time of a transaction. In some embodiments, the associated value for a stored value item varies depending on characteristics of the transaction, such as the time of the transaction or the merchant. For example, the associated value for a stored value item that is a coupon may be 10% off if the item is used between 2 PM and 4 PM (e.g., during typical periods of low traffic) and 5% off at other times. Similarly, the system may convert non-currency units to a currency amount using a rate that varies depending on transaction characteristics. One skilled in the art will appreciate that other types of stored value could also be used. Each stored value item may also have an associated customer identifier, one or more conditions for applying the stored value, and an expiration date. Some stored value items are unconditional. These items (referred to as "vouchers") are generally associated with a particular customer and can be used for any transaction. Customers may receive vouchers as payments or gifts from other customers (e.g., as a gift card), as rebates from merchants or

US 9,292,852 B2

**5**

manufacturers, or as refunds from merchants. Vouchers may have an expiration date or may retain value until redeemed by a customer.

Other stored value items have conditions that restrict the transactions that they may be used for. These items are referred to as "coupons" and function similarly to traditional paper coupons. For example, the service may store coupons that can only be used for particular items or at particular merchants. The service may be configured to automatically provide coupons to the customer based on characteristics of a particular transaction or the customer's transaction history. For example, the intermediary service may provide a coupon when the customer purchases a particular item or when the customer purchases items from a particular merchant. Similarly, the service may provide a coupon based on a series of purchases from a merchant or based on repeated purchases of a particular product. The service may allow a customer to use a coupon immediately or save the coupon for later use. Each saved coupon may have a range of effective dates or times, a specified number of uses, or both an effective date/time range and a number of uses. For example, a coupon may be effective for the month of June, for a time period from 2 PM to 4 PM each day, or from the date the coupon was issued to an expiration date (e.g., until July 4th). If the current date does not fall within the effective dates of the coupon, the service does not allow the coupon to be utilized by the customer. If a coupon has expired (i.e., the current date falls after the latest effective date for the coupon), or if or the number of uses for the coupon has been exhausted, the service may remove the coupon from the customer's account.

During operation, the intermediary service generally processes stored value after or in conjunction with the processing of rules by the rules module. The service determines relevant information from the authorization request, such as customer information and merchant information, and uses the information to determine whether there are any applicable stored value items. The service then determines whether to apply the stored value items to the transaction. In some cases, the service sends a transaction notification indicating the available stored value items and requesting that the customer select which items to apply. Alternatively, the service may be configured to automatically apply some or all available items. For example, the service may allow a customer to pre-authorize some items to be automatically applied without requiring additional verification. Items that are not pre-authorized may be excluded from use or applied based on the customer's response to a transaction notification. The service may also allow a coupon issuer to specify that its coupons should be automatically applied without requiring customer authorization. After determining which items to apply, the service uses the stored value items to reduce the transaction amount. The service then proceeds with the payment process to request payment for the remainder of the transaction amount.

The intermediary service may also provide functionality to enable a customer to selectively change the status of an account by activating or deactivating the account. In some embodiments, the intermediary service manages account status using the rules module capabilities discussed above. In these embodiments, the intermediary service allows the customer to define a rule to specify time intervals when an account may be used. When an authorization request is received, the intermediary service rejects the request if the time is not within an authorized time interval.

In other embodiments, the intermediary service provides an interface for customers and manages account status, while the issuing institution manages activation or deactivation using the account status information. In these embodiments,

**6**

a customer communicates with the intermediary service to direct the service to change the account status. The intermediary service determines the account's issuing institution and provides an indication to the issuing institution of the current status of the account (or of the change in status). In some embodiments, the intermediary service provides the indication by transmitting a message to the issuing institution to notify it of the new status. Alternatively, the intermediary service may store the account status information in its own database. The issuing institution may then request account status from the intermediary service whenever it needs the information, such as when it receives an authorization request. An advantage of the issuing institution-managed implementation is that it allows the intermediary service to control account status for all uses of the account, even for authorization requests that do not pass through the intermediary service. At the same time, this implementation takes advantage of the fact that the customer is already registered with intermediary service, so that the intermediary service can provide verification procedures to confirm changes in account status.

In some embodiments, a customer may provide the unique identifying information to an online merchant via a computer interface, such as via a checkout process implemented on a web site. The online merchant transmits the unique identifying information to an acquirer (i.e., a financial institution that provides a clearinghouse service for consolidating financial transactions) in an initial authorization request. The transaction is then processed by the intermediary service in a similar manner to transactions received from a brick-and-mortar merchant. Alternatively, the online merchant may bypass the acquirer by transmitting the information directly to the intermediary service. The transaction may then be processed by the intermediary service as discussed above, with the online merchant acting in the acquirer's role.

When sensitive account information is transmitted through the intermediary service from a financial institution to an acquirer, the account information may remain in an encrypted form that cannot be interpreted or used by the intermediary service. For example, the intermediary service may allow customers to request payment with a debit card that requires a PIN or other unique code. Rather than having the customer enter the PIN or unique code, the PIN or code is transmitted by a financial institution across the intermediary service in an encrypted manner such that it cannot be utilized by the service. Only the intended receiving party has the necessary information to decrypt and use the received PIN or code. In this manner, customers are able to utilize the intermediary service for transactions like debit purchases. Such transactions are normally not available in certain environments because of rules pertaining to the handling and processing of PINs.

Various embodiments of the invention will now be described. The following description provides specific details for a thorough understanding and an enabling description of these embodiments. One skilled in the art will understand, however, that the invention may be practiced without many of these details. Additionally, some well-known structures or functions may not be shown or described in detail, so as to avoid unnecessarily obscuring the relevant description of the various embodiments. The terminology used in the description presented below is intended to be interpreted in its broadest reasonable manner, even though it is being used in conjunction with a detailed description of certain specific embodiments of the invention.

FIG. **1** is a block diagram of a representative environment **100** in which various parties process financial transaction data

US 9,292,852 B2

7

according to prior art methods. In the prior art environment, a transaction is initiated in step **1** when a customer **102** tenders a credit or debit card **104** at a point of purchase associated with a merchant **106**. As used herein, "point of purchase" refers to any point where a card is used to pay for a good or service. A point of purchase may include, for example, a store, a vending machine, an online retailer, a restaurant, a contractor, a provider of services, etc.

To obtain identifying information contained on a tendered card and initiate the transaction process, the customer **102** or the merchant **106** may swipe the card **104** through a card reader and, if required, enter a PIN or code. Alternatively, for a purchase made via a website, phone, or other network-accessible service, the customer **102** may provide a card number, associated name, and/or other identifying information to the merchant. The identifying information that is obtained from the card depends on the type of transaction and the available systems for reading the card. Standard credit and debit cards include several sets of information referred to as Track **1** and Track **2**. The data on Track **1** is considered public, while the data on Track **2** is considered private and must be transmitted using special security protections dictated by the issuing bank or the payment association (e.g., Visa, Master-Card, etc.). However, transaction fees are lower if data from Track **2** is also provided. Because of the security restrictions and the lack of a reader that can read the tracks, data from Track **2** is generally not available for online, mail order, or telephone transactions (generally referred to as "card not present transactions").

After receiving identifying information, the merchant **106** in step **2** sends an authorization request to an acquirer **108**. The authorization request includes transaction information such as the identifying information, point of purchase information (e.g., a merchant's name or identifier), and the transaction details (e.g., price, products, quantities, fees and taxes). The acquirer **108** is generally a separate financial institution that functions as a clearinghouse for many electronic transactions. The acquirer **108** in step **3** forwards the authorization request to a payment association **112**, which forwards the request to an issuing institution **110** in step **4**. The issuing institution **110** may be, for example, a bank or other institution that provided the credit or debit card.

After receiving the authorization request, the issuing institution **110** evaluates the request by verifying the identifying information and the transaction amount. The issuing institution **110** then authorizes the transaction in step **5** by transmitting an authorization message to the payment association **112**, which forwards the message to the acquirer **108** in step **6**. In step **7**, the acquirer **108** forwards the authorization message to the point of purchase **106**, which records the completed transaction. At a later time, the issuing institution **110** provides payment for the transaction by transmitting the funds in step **8** to the payment association **112**, which forwards the payment to the acquirer **108** in step **9**. In the final step, the acquirer forwards the funds to the point of purchase **106** in step **10**.

FIGS. **2**A, **2**B, and **2**C illustrate an environment **200** in which an intermediary service **204** operates and depicts the order in which various service and system modules involved in the transaction communicate in order to authorize and facilitate the completion of a specific transaction. FIG. **2**A illustrates the communication steps for sending an initial authorization request to the intermediary service. A transaction begins in step **1** when a customer **102** uses a token **202** to provide unique identifying information to the merchant **106** at a point of purchase (POP) in order to make a purchase. As used herein, "token" is a generic term that refers to various

8

means for providing the unique identifying information to the merchant **106**. For example, a token may be a magnetic strip on a credit or debit card, a radio frequency identification (RFID) tag embedded in a card or mobile device, an optical pattern that is scanned by a scanner (e.g., a bar code) or similar or different technologies for conveying identifying information to the merchant. As discussed above, the identifying information may be provided at the point of purchase by swiping a card or by the customer **102** providing the information such as by typing identifying information using a keyboard (e.g., when purchasing at a website). The point of purchase may alternatively receive the information by detecting, through the use of a radio frequency identification (RFID) reader, an RFID token or other identification token associated with the card or with the customer's mobile device. The token **202** may be issued by the intermediary service **204** and is generally not associated with the customer's credit or debit cards. The unique identifying information may be an alpha-numeric code, a sixteen digit number similar to a credit card number, or one or more pieces of data that uniquely identifies the customer. The point of purchase **106** then generates the initial authorization request based on the received identifying information, point of purchase information, and transaction information and transmits the initial authorization request to the acquirer **108** in step **2**. In some embodiments, the initial authorization request includes a unique transaction identifier. The transaction identifier may be retained throughout the authorization process such that every participant can use it to identify the transaction.

Rather than send the initial authorization request directly to the payment association **112**, the acquirer **108** in step **3** sends at least part of the data from the initial authorization request to the intermediary service **204**. The acquirer is able to route the initial authorization request to the intermediary service **204** because the identifying information transmitted in the authorization request identifies the initial authorization request as being associated with a customer **102** having an account with the intermediary service **204**. After receiving the data from the initial authorization request from the acquirer **108**, as will be discussed in additional detail herein, the intermediary service **204** authenticates the request to ensure that the request has been issued from a valid acquirer and the transaction is valid. Among other steps, the intermediary service **204** also retrieves customer information associated with the transaction. The customer information includes an address of a mobile device that is associated with the customer, one or more payment instruments (e.g., credit cards, debit cards, bank accounts, etc.) that are associated with the token **202**, and a verification code that is associated with the customer, the token, or with a particular payment instrument. The customer information may also include any customer-defined rules on how such payment instruments are to be applied to the transaction.

FIG. **2**B illustrates a two-step authorization process performed by the intermediary service. After authenticating the initial authorization request from the acquirer **108**, at a step **4***a* the intermediary service **204** transmits a transaction notification message to a mobile device **206** that is associated with the customer. The mobile device may be a mobile phone, a smart phone, a media player (e.g., an Apple iPod, or iTouch), a mobile game device (e.g. a Nintendo GameBoy, a Sony PSP), a personal digital assistant (PDA), an email device (e.g., a Blackberry), or any other device that may send and receive wireless transmissions. The transaction notification message is transmitted to the mobile device via an XMPP message using the retrieved address of the mobile device. The XMPP message may be sent using a data channel, such as a data

US 9,292,852 B2

**9**

network implementing TCP/IP provided by a wireless service provider. The message may be sent to a standard TCP port, such as port **5222**. The retrieved address may be, for example, a telephone number, network address, or e-mail address associated with the mobile device. The transaction notification message includes transaction information such as the amount, time, or location of the transaction. The transaction notification message may also request the customer **102** to provide information to continue the transaction, such as to provide a transaction confirmation, a customer-specific, token-specific, or payment instrument specific) verification code, and/or a selection of a payment instrument to use for the transaction.

In the event that the intermediary service **204** is unable to transmit the transaction notification message to the mobile device, the intermediary service may support fallback methods for transmitting a transaction notification message to the customer. For example, in the event that the intermediary service is unable to communicate with the mobile device using an XMPP-formatted message, the service may also send the transaction notification message to the device using a short message service (SMS) message, an email message, or through another messaging channel. In some embodiments, the intermediary service may call the mobile device (if the mobile device has voice capability) and may use an Interactive Voice Response (IVR) system to solicit the confirmation from the customers. If the mobile device cannot be reached via any channel, in some embodiments the intermediary service **204** transmits the transaction notification message to a different device capable of receiving data messages that is associated with the customer, such as a personal computer. Alternatively, the intermediary service may attempt to communicate with the customer through a land-line telephone. The intermediary service may maintain a prioritized list of fallback methods to use, and may proceed through the list until the transaction notification message is delivered to the customer or until a certain period has elapsed and the service declares a delivery failure.

FIGS. **3A**-**3D** are representative screenshots of a transaction notification message that may appear to a customer of a mobile device. Although the figures depict each example message separately, portions of the messages shown in FIGS. **3A**-**3D** may in some cases be combined in a single message. FIG. **3A** depicts a representative screenshot **220** associated with a first notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a Barnes & Noble bookstore), a total amount being charged ($21.36), and a financial instrument that is being used to complete the transaction (a personal Visa card, automatically selected as a result of a service, customer, or merchant rule). For transactions under a first threshold, the service may not require a customer to confirm that the transaction should take place. In the depicted example, the notification message therefore includes a message **224** to the customer indicating that no response is required to approve the transaction. If, however, the customer is unaware of the transaction and therefore believes that the transaction may be a fraudulent one, the customer is presented with a "deny" button **226**. By selecting the deny button, the customer is able to notify the intermediary service that the transaction is fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

FIG. **3B** depicts a representative screenshot **228** associated with a second notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a

**10**

restaurant), a total amount being charged ($75.24), and a financial instrument that is being used to complete the transaction (a debit card, automatically selected as a result of a service, customer, or merchant rule). For transactions between the first threshold and a second threshold, the service may require a customer to confirm that the transaction should take place. In the depicted example, the notification message therefore includes a message **230** to the customer indicating that the customer must confirm or deny the transaction. To confirm the transaction, the customer may select a "confirm" button **232**. By selecting the confirm button, the customer is able to notify the intermediary service that the transaction should proceed. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

FIG. **3C** depicts a representative screenshot **234** associated with a third notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, Office Depot), a total amount being charged ($132.16), and a financial instrument that is being used to complete the transaction (a business American Express card, automatically selected as a result of a service, customer, or merchant rule). For transactions above the second threshold, the service may require a customer to confirm that the transaction should take place by entering the customer's verification code. In the depicted example, the notification message therefore includes a message **236** to the customer indicating that the customer must enter the verification code. A text entry box **238** is provided, which displays a default character (e.g., "*") as an additional security measure as the customer keys in their verification code. After entry of the code, the customer selects an "enter" button **240** to confirm the transaction. By selecting the enter button, the customer notifies the intermediary service that the transaction should proceed, provided that the verification code entered by the customer matches the verification code that is associated with the customer, the token, or the payment instrument and stored by the service. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is fraudulent and thereby cause the intermediary service to terminate the transaction.

FIG. **3D** depicts a representative screenshot **242** associated with a fourth notification message. The notification message includes a region **222** that contains details of the financial transaction, such as a vendor (in the depicted example, a restaurant) and a total amount being charged ($75.24). Rather than the display of an automatically-selected payment instrument that will be used as the financial instrument in the transaction, however, the fourth notification message includes a drop-down menu **244** that allows the customer to affirmatively select the desired payment instrument that the customer would like to use for the transaction. For example, the customer may select a direct transfer from a checking account (depicted), or any debit, credit, gift certificate, or other holder of value that is associated with the account of the customer at the intermediary service. Once the customer has selected the desired financial instrument to use in the transaction, the customer then confirms that the transaction should proceed by selecting the "confirm" button **232**. By selecting the confirm button, the customer is able to notify the intermediary service that the transaction should proceed using the selected financial instrument. To deny the transaction, the customer selects the "deny" button **226**. Selecting the deny button notifies the intermediary service that the transaction is

US 9,292,852 B2

**11**

fraudulent or in error and thereby cause the intermediary service to terminate the transaction.

Returning to FIG. **2**B, when required by the transaction notification message (such as required by the transaction notification messages in FIGS. **3**B-**3**D), the customer **102** uses the mobile device **206** to send a confirmation message. Such a confirmation message is sent in a step **4**b, and may confirm the transaction or deny the transaction in the transaction notification message. If the customer denies the transaction, the intermediary service ends further processing of the first authorization request and notifies the acquirer **108** that the request has been denied. The acquirer, in turn, notifies the merchant who then cancels the transaction.

If, however, the customer confirms the transaction in the notification message from the mobile device **206**, or if the notification message does not require a confirmation receipt from the customer (such as in the transaction notification message in FIG. **3**A) the intermediary service **204** generates an information request, which is used to obtain account information for a selected payment instrument. As described below, the account information is used to complete the process of authorizing the transaction. The information request is based on the initial authorization request, the customer's verification message, and the stored customer information. The information request is to be sent to the appropriate issuing institution with sufficient information to allow the issuing institution to provide the correct account information in response to the request.

If the retrieved customer information only contains a single payment instrument, the information request is constructed and transmitted to the issuing institution associated with the single payment instrument. If, however, the retrieved customer information includes multiple payment instruments, the intermediary service **204** may automatically determine which payment instrument is to be used for the transaction. The determination may be based on default rules that are maintained by the service. For example, the service may require that all transactions below a certain dollar value be processed as a debit transaction, and all transactions above the certain dollar value be processed as a credit card transaction. The determination may be based on rules that are specified by the merchant associated with the transaction. For example, a merchant may only accept a certain type of charge card and the customer may be required to use the charge card that is accepted by the merchant. The determination may also be based on rules that are defined by the customer, such as the use of one payment instrument for charges at restaurants and the use of another payment instrument for charges everywhere else. The customer may define processing rules based on many different factors, such as the location of the purchase, the point of purchase, and the day or date of the purchase. As an example, a customer might specify that a business credit card should be used for transactions occurring during regular business hours on weekdays, while a personal credit card should be used for transactions occurring on a weekend or after normal business hours on a weekday. In some circumstances, such as depicted in FIG. **3**D, the transaction notification message that is transmitted to the customer contains a menu that allows the customer to select which payment instrument that they would like to use for the transaction. If such a selection is made by the customer, the intermediary service uses the selected payment instrument.

The service may also apply stored value items to pay a portion of the transaction amount prior to or in conjunction with requesting authorization for the remainder. In some embodiments, the service sends a listing of available stored value items to the customer in the transaction notification.

**12**

The customer may then select individual items to apply to the transaction. After applying the stored value items, the intermediary service **204** reduces the transaction amount based on the value of the applied items.

The intermediary service **204** transmits the information request to an issuing institution **110** associated with the selected payment instrument. If the intermediary service is integrated with the issuing institution, the request may be directly sent to the issuing institution **110** in step **5**a. The issuing institution **110** responds to the information request by providing account information associated with the selected payment instrument. In some embodiments, the account information is encrypted such that the information can be decrypted by the acquirer **108** but not by the intermediary service **204**. This provides additional security by reducing the number of entities that have access to the account information. However, in other embodiments, the intermediary service **204** decrypts the account information after receiving it from the issuing institution and provides the account information to the acquirer using its own encryption key. Because the account information is obtained directly from the issuing institution, it may also include Track **2** information for the payment instrument, which increases the security and reduces the cost of the transaction.

After obtaining the account information from the issuing institution **110**, the intermediary service **204** in step **7** sends the account information and, if modified, the modified transaction amount to the acquirer **108**. The intermediary service **204** may also send a list of stored value items applied to the transaction. As discussed below, the acquirer **108** then generates a modified authorization request based on the initial authorization request, the modified or unmodified transaction amount, and the received account information associated with the selected payment instrument. In some embodiments, this is done by replacing the identifying information in the initial authorization request with the account information and replacing the original transaction amount with the appropriate transaction amount. If the intermediary service **204** sent a list of stored value items applied to the transaction, the acquirer **108** may also add the list of stored value items to the modified authorization request.

In those cases in which the intermediary service **204** does not have a direct relationship with the issuing institution **110** of the selected payment instrument, however, the intermediary service may obtain the necessary account information from a secure storage provider **208**. The secure storage provider **208** is a data storage service that stores account information for payment instruments in a similar fashion to the issuing institution to enable the intermediary service to proceed with the transaction. The account information may be provided to the secure storage provider **208** at any time prior to the transaction, such as when the customer initially registers with the intermediary service. At a step **6**a, a request is made to the secure storage provider **208** for account information associated with the customer's selected payment instrument. At a step **6**b, the secure storage provider responds with the account information. The intermediary service **204** then provides the account information to the acquirer **108**, which generates the modified authentication request as if the information had been obtained from the issuing institution **110**.

FIG. **2**C illustrates a process for authorizing a transaction using a modified authorization request. As shown in FIG. **2**C, the process is executed in a similar manner to the process in FIG. **1**. Thus, in step **8**a, the acquirer sends the modified authorization request to the payment association **112**, which in step **9**a sends the request to the issuing institution **110** associated with the selected payment instrument. The issuing

US 9,292,852 B2

**13**

institution **110** authorizes the transaction based on the information in the modified authorization request (i.e., the account information provided through the intermediary service **204**). In step **9***b*, the issuing institution **110** transmits an authorization message to the payment association **112**, which forwards the authorization message to the acquirer **108** in step **8***b*. In step **10**, the acquirer **108** transmits the authorization message to the point of purchase **106**, which records the transaction. The payment process may then be carried out using the method discussed above. In some embodiments, the acquirer **108** also sends a copy of the authorization message or other transaction information (e.g., items purchased) to the intermediary service **204**. The intermediary service **204** may then send a receipt message to the mobile device **206** to indicate that the transaction was authorized.

FIG. **4** is a high-level block diagram showing an example of the architecture of a server **300**. One or more servers **300** may be utilized by, for example, the intermediary service **204** or the acquirer **108** to implement the transaction processing depicted in FIGS. **2A-2C**. The server **300** includes one or more processors **302** and memory **304** coupled to an interconnect **306**. The interconnect **306** shown in FIG. **4** is an abstraction that represents any one or more separate physical buses, point-to-point connections, or both connected by appropriate bridges, adapters, or controllers. The interconnect **306**, therefore, may include, for example, a system bus, a Peripheral Component Interconnect (PCI) family bus, a HyperTransport or industry standard architecture (ISA) bus, a small computer system interface (SCSI) bus, a universal serial bus (USB), IIC (I2C) bus, or an Institute of Electrical and Electronics Engineers (IEEE) standard 1394 bus, sometimes referred to as "Firewire".

The processor(s) **302** may include central processing units (CPUs) of the server **300** and, thus, control the overall operation of the server **300** by executing software or firmware. The processor(s) **302** may be, or may include, one or more programmable general-purpose or special-purpose microprocessors, digital signal processors (DSPs), programmable controllers, application specific integrated circuits (ASICs), programmable logic devices (PLDs), or the like, or a combination of such devices. The memory **304** represents any form of random access memory (RAM), read-only memory (ROM), flash memory, or the like, or a combination of these devices.

The software or firmware executed by the processor(s) may be stored in a storage area **310** and/or in memory **304**, and typically includes an operating system **308** as well as one or more applications **318**. Data **314** utilized by the software or operating system is also stored in the storage area or memory. A network adapter **312** is connected to the processor(s) **302** through the interconnect **306**. The network adapter **312** provides the server **300** with the ability to communicate with remote devices, such as clients, over a network **316** and may be, for example, an Ethernet adapter.

FIG. **5** illustrates a logical block diagram of the intermediary service **204**. As discussed above, the intermediary service **204** receives an initial authorization request from the acquirer **108** and executes additional steps to notify the customer of the transaction and receive the customer's verification of the transaction. The intermediary service **204** also requests account information from the issuing institution **110** and provides the account information to the acquirer **108**. Aspects of the service may be implemented as special purpose hard-wired circuitry, programmable circuitry, or as a combination of these. As will be described in additional detail herein, the intermediary service **204** includes a number of modules to implement the functions of the service. The mod-

**14**

ules and their underlying code and/or data may be implemented in a single physical device or distributed over multiple physical devices and the functionality implemented by calls to remote services. Assuming a programmable implementation, the code to support the functionality of the service may be stored on a computer readable medium such as an optical drive, flash memory, or a hard drive. One skilled in the art will appreciate that at least some of the individual modules may be implemented using application-specific integrated circuits (ASICs), programmable logic, or a general-purpose processor configured with software and/or firmware.

As previously described, the intermediary service **204** receives an initial authorization request from the acquirer **108** and transmits an information request to the issuing institution **110**. The intermediary service **204** receives account information in response to the information request and provides the received account information to the acquirer **108**. The intermediary service **204** also communicates with a mobile device **206** to notify the customer of a requested transaction and receive the customer's verification of the transaction. The intermediary service **204** also interacts with a storage component **402**, which is configured to store configuration information and customer information. In particular, the storage component **402** stores data linking the identifying information received from the acquirer **104** to customer-specific information, such as the address of the mobile device **206**, one or more payment instruments associated with the customer, and a verification code or codes associated with the customer, the token, or the payment instruments.

The intermediary service **204** includes various modules to assist in processing authorization requests. In particular, the intermediary service **204** includes a validation module **404**, which is configured to receive initial authorization requests and validate that the requests are correctly formed. Validating initial authorization requests may include, for example, verifying that the request is correctly structured and includes all of the required data fields. In some embodiments, the authorization request is specified in extensible markup language (XML). In these embodiments, validation includes determining that the XML is well-formed.

The intermediary service **204** also includes an authentication module **406**, which is configured to authenticate the sender of the authorization request. Authentication is used to avoid having an imposter pose as a legitimate acquirer for the purpose of submitting fraudulent requests for payment. The authentication module **406** may authenticate the acquirer using methods well known in the art. For example, the authentication module **406** may be configured to verify a digital signature associated with the acquirer and contained in an initial authorization request or in an authentication exchange completed prior to receiving an initial authorization request. Alternatively, the authentication module **406** may be configured to authenticate the acquirer by using a shared encryption key to decrypt a portion of the data in the authorization request. To do so, the authentication module **406** interacts with an encryption module **408**, which is configured to execute an encryption algorithm that is complementary to an encryption algorithm that is used by the acquirer **108**. The encryption module **408** is also used to encrypt messages sent from the intermediary service **204** to mobile devices **206**, issuing institutions **110**, and the data storage service **208**. In some embodiments, the encryption module also decrypts messages received from the issuing institution and encrypts messages sent to the acquirer **108**.

The intermediary service **204** includes a customer management module **410**, which is configured to retrieve customer information associated with the initial authorization request.

US 9,292,852 B2

15
16

The customer information is accessed from the storage component **402** based on the identifying information contained in the initial authorization request. As discussed above, the identifying information may be an alpha-numeric code, a sixteen digit number similar to a credit card number, or one or more pieces of data that uniquely identifies the customer (e.g., a customer nickname). The stored customer information include an address of a mobile device associated with the customer, information defining one or more payment instruments that may be utilized by the customer to complete a purchase transaction, and a verification code or codes that are associated with the customer, the token, or the payment instruments. If multiple payments instruments are defined, the customer information may also specify a default payment instrument or a set of parameters for determining which payment instrument should be used for a particular transaction.

After the customer management module **410** retrieves the stored customer information, a rules module **412** determines the service's response to the initial authorization request. In some embodiments, the rules module **412** is configured to determine the type of notification to provide to the customer's mobile device and the required level of customer response to the notification in order to confirm the transaction. The rules module **412** may also determine a selected payment instrument to use in the transaction. The type of notification may vary depending on the type and amount of the transaction. For example, the service may require different responses from the customer depending on the total value of the purchase. At a first level (e.g., less than $25), the service may be configured to send a transaction notification to the mobile device without requiring any response from the customer. At a second level (e.g., between $25 and $100), the service may require that the customer reply to the transaction notification with a response that either authorizes or rejects the transaction. At a third level (e.g., above $100), the service may require that the customer reply to the transaction notification with a response that either authorizes or rejects the transaction, as well as provide a verification code with the response. Such rules may be defined by the operator of the service, by merchants that interact with the service, by issuing institutions, or by customers that use the service. While three levels are provided as an example, it will be appreciated that a greater or lesser number of levels may be utilized by the service. If existing service-, merchant-, or customer-defined rules do not already specify the payment instrument to use in the transaction, the rules module **412** will also require that the customer select a payment instrument to use for the transaction in the response. In some embodiments, the rules module **412** includes merchant-defined rules specifying that certain payment instruments are or are not accepted by a particular merchant. For example, a particular merchant may specify a rule indicating that it will not accept payment using American Express and will accept payment using the merchant's gift cards. The rules module **412** can then use this information in selecting the payment instrument or in limiting the number of payment instruments from which a customer can select for a transaction.

In general, the rules module **412** stores a set of rules in the storage component **402**. Each rule includes information specifying a customer or group of customers to which the rule applies, a set of conditions that must be met for the rule to be satisfied, and associated actions that are taken when the rule has been satisfied. In the simplest case, a rule identifies a particular customer whose transactions will be subject to the rule. However, a rule may also apply to groups of customers (e.g., for merchant-defined rules), or to all customers (e.g., for service-defined rules). Whether a rule applies to a single

customer, to a group of customers, or to all customers may be specified by a code or other mapping to a list of customers that the service maintains. In some embodiments, an individual customer is allowed to create additional rules that apply to the customer's account. For example, the service may allow a customer to create sub-accounts associated with a master account (e.g., a parent creating an account for a child). The customer is then allowed to define an additional set of rules to apply to one or more of the created sub-accounts.

The set of conditions for a rule defines a set of tests that the rules module **412** evaluates each time it evaluates the rule. In order for the rule to be satisfied, all of the conditions specified by the rule must be met. Each condition tests one or more factors. The factors tested may include binary factors (factors having a "true" or "false" value), factors having a numerical value (e.g., numbers falling within a range from 1-100); factors having a range of non-numeric values (e.g., high/medium/low), factors having a textual value (e.g., if a particular string equals a vendor name), or any other value that may be tested. A rule may connect multiple conditions using Boolean connectors (e.g., AND, OR, or NOT operators) in order to determine whether the rule has been satisfied in the applied situation. For example, the service could apply a rule for a customer that utilizes a corporate credit card of the customer for all charges at a particular merchant that occurs during a work week. Such a rule may be phrased as follows:

---

IF (day = Monday, Tuesday, Wednesday, Thursday, or Friday) AND
(vendor = Office Max) AND (below credit limit? = true)
THEN (apply <Corporate Card>)

---

The service could also apply a rule to carry out the transaction value test described above, where the service executes a different verification procedure depending whether the transaction value is within a first range (under $25), a second range (between $25 and $100), or a third range (over $100). Such a rule may be phrased as follows:

---

IF (transaction value <$25.00) THEN (apply
<Verification Procedure 1>) ELSE
IF ((transaction value >$25.00) AND (transaction value <$100.00)) THEN
(apply <Verification Procedure 2>) ELSE
IF (transaction value >$100.00) THEN (apply <Verification
Procedure 3>)

---

Other conditions that the service could support are discussed in greater detail below.

Each rule also specifies a set of actions to be executed based on the results of evaluating the conditions. In some embodiments, each rule includes a single action that is executed when the conditions are met and not executed when the conditions are not met. Alternatively, the service may define multiple actions that are selected based on the results of testing the conditions. An action may be simple, such as rejecting the authorization request, or more complicated, such as specifying a verification procedure to be executed before the authorization process continues. The rules module **412** may be configured to execute each action immediately. However, because the service will often test multiple rules for each transaction, the rules module **412** generally tracks the actions to be performed and executes the action(s) after testing every applicable rule.

In some embodiments, a customer, merchant, or the service may specify a time interval during which the rule is active. Each rule with a specified time interval is evaluated only during the time interval and is not evaluated at other times. By

17
18

allowing a rule to be activated for certain time periods and deactivated for other time periods, a rule may be flexibly tailored to different circumstances. For example, a rule could be tailored by a customer to automatically cover certain payment requests that occur when the customer is on vacation.

One skilled in the art will appreciate that a wide variety of rules can be defined using information that is managed by, or accessible to, the service. In particular, conditions may be defined to evaluate transaction information, customer or account information, or other service information. Examples of factors that may be considered when defining a condition include:

The amount of the transaction,

Whether a token was presented to the merchant for the transaction and conveyed identifying information to the merchant, or whether the customer manually-entered such identifying information,

Whether a card verification code (CVV) was provided as part of the transaction,

The location of the transaction and/or the merchant (e.g., whether the location is within a particular geographical area),

Whether the customer's location differs from the merchant's location (e.g., for Internet purchases),

The time and distance from the last transaction or from a combination of recent transactions,

The customer's historical purchase activity,

Rewards provided to the customer for using a particular payment instrument for the transaction,

The merchant type (e.g., supermarket, electronics store),

The transaction value (e.g., whether the transaction value is within a specified range),

The item type or description (e.g., whether the transaction involves a particular item),

The transaction time,

The payment method, and

Any issuing institution-specific rules.

Similarly, the service may support a variety of actions that can be executed based on the result of evaluating a rule. Examples of actions that may be defined include:

Rejecting or accepting the transaction,

Specifying one or more verification procedures that are executed as part of the transaction (e.g., specifying whether the customer must provide a PIN to verify the transaction),

Selecting one or more payment instruments to be used to complete the transaction or limiting available payment instruments that may be used in the transaction,

Selecting one or more mobile devices to receive a transaction notification,

Selecting a particular shipping method or profile for products that are purchased during the transaction.

The "selecting a payment instrument" action enables a customer to specify that a particular payment instrument should always be used in specified situations, such as for transactions with a particular merchant or transactions that exceed a specified amount. Similarly, the "selecting a mobile device" action allows a customer to specify that multiple notifications should be sent for some transactions (e.g., a message to a first device requesting approval and a message to a second device containing transaction information but not requesting approval). As another example, a parent who has established a sub-account for a child could specify a rule that notifications for low-value transactions are sent to the child's mobile device, while notifications for higher-value transactions are sent to the parent's mobile device.

The service may also maintain a transaction history that tracks purchases for an account over a period of time. The service can use the transaction history information to provide rules that can respond to transactions that deviate from the usual patterns for the account. For example, rules may be defined to detect when purchases are made at a much higher frequency than usual or at locations that are not typical. In response, the rules may direct the service to require additional verification or to reject unusual transactions.

The intermediary service 204 also includes a stored value module 426, which is configured to apply stored value items to a transaction. While the rules module 412 is processing the rules that are relevant to the authorization request, or after the rules module 412 has processed the rules that are relevant to the authorization request, the stored value module 426 determines stored value items that can be applied to the transaction. The service uses identifying information in the authorization request to look up stored value items associated with the customer, such as vouchers and saved coupons. As described above, a customer may receive a voucher as a payment or gift from another customer, as a rebate, or as a refund. Moreover, a customer may have saved coupons that were offered to the customer and saved from earlier transactions. In some cases, the value or other characteristics of these stored coupons may change over time. For example, a coupon may increase or decrease in value as more customers use it. In these cases, the service may request the coupon provider to provide an updated value for the coupon before proceeding with the transaction.

The service also uses transaction information, such as merchant information and/or the identity of transaction items, to determine if any coupons are immediately available for use by the customer. The service may also determine coupons by evaluating the customer's overall purchase history or the customer's purchase history for the individual merchant. Unlike vouchers and stored coupons, immediately-available coupons are not initially associated with the customer's account. Instead, the coupons are automatically identified by the service at the time of the corresponding authorization requests. Coupons may be provided to the intermediary service 204 by entities such as merchants or manufacturers. For example, a manufacturer might partner with the intermediary service to provide a coupon to customers who purchase multiple units of the manufacturer's products within a specified period of time. The intermediary service 204 can then provide the coupon regardless of where the items were purchased by the customer. Similarly, a merchant might partner with the intermediary service 204 to provide coupons or vouchers to frequent customers. An advantage of using the intermediary service to tender coupons or vouchers to customers is that a merchant can provide benefits to frequent customers without having to build its own infrastructure to track customer habits. In addition, because the service aggregates transactions from multiple merchants, the service has greater knowledge of customer habits than any individual merchant. The service also enables manufacturers to reward customers for purchases that occur across several merchants.

In some embodiments, the intermediary service automatically applies all available stored value items to the transaction. The service may then provide a transaction notification to inform the customer which items were applied. Alternatively, the stored value module 426 may transmit a list of some or all available stored value items to the customer's mobile device in a transaction notification. The service may then prompt the customer to select which stored value items should be applied to the notified transaction. Newly-generated stored value items that are not applied to the notified

**19**

transaction, such as auto-generated coupons that the customer does not use immediately, may be automatically stored by the service (if allowed by the issuing merchant or manufacturer) in the customer's account for subsequent use by the customer. Items that were already stored in the customer's account (e.g., vouchers or stored coupons) remain in the customer's account without any additional customer action. A stored value item is removed from a customer's account if, for example, the stored value item has expired, if the stored value item is completely utilized (e.g., if no value remains, if a multi-use stored value item is exhausted, etc.), or if the customer expressly removes the stored value item. One skilled in the art will appreciate that the intermediary service may provide a summary web page to enable the customer to view and manage stored value items that have been saved to the customer's account.

The intermediary service also includes an advertising module **428**, which is configured to provide targeted advertisements to the customer's mobile device. The advertising module **428** evaluates the information in the authorization request, including the merchant and the associated products and services, and the customer's purchase history to determine if the service should provide one or more advertisements to the customer. As with coupons, the intermediary service **204** may partner with merchants or manufacturers to provide advertisements based on particular purchases or groups of purchases. The service may also provide advertisements based on the merchant at which the purchase is being made. Because the service has detailed information about the transaction and the customer's overall purchase history, the advertising module **428** can target the advertisements to ensure that they are relevant to the customer. For example, when a customer purchases a mobile device, the service might automatically provide an advertisement for cases or other accessories for use with the mobile device.

The intermediary service **204** also includes a mobile device communication module **414**, which is configured to communicate with mobile devices **206**. The mobile device communication module **414** generates and transmits a transaction notification message in response to the initial authorization request. The transaction notification message includes transaction information, such as the amount of the transaction and the name or location of the merchant requesting the authorization. The transaction notification message may also specify a payment instrument to use for the transaction or specify a list of payment instruments and request a selection from the list. The transaction notification may be sent to the mobile device in a variety of messaging formats. In some embodiments, the transaction notification is transmitted to mobile devices **206** via an asynchronous XMPP message. To allow a mobile device to receive an XMPP-encoded message, the mobile device includes a mobile device client **418** that runs in the background of the device. The mobile device client **418** may be pre-installed on the mobile device **206**, or may be downloaded to the mobile device **206** when a customer opens an account with the intermediary service. In some embodiments, the mobile device client **418** operates continuously, since it is impossible to predict when a customer might attempt to make a purchase. In these embodiments, the mobile device **206** remains in a state where it always can receive a transaction notification message. However, the mobile device **206** will often operate in a standby or low-power mode in order to preserve battery power. In these embodiments, the mobile device client **418** cannot be operated continuously. Instead, the intermediary service **204** sends a wake-up message to the mobile device client **418** before sending a transaction notification message. The wake-

**20**

up message may be transmitted on a different messaging channel, such as via a binary SMS message or via a WAP push message or other remote push service.

Once the service has determined that the transaction has been confirmed by the customer, an issuing institution communication module **416** generates an information request based on the received initial authorization request, the customer information, and the information received from the mobile device **206** (if any). In particular, the information request may include the desired payment instrument information, the transaction amount, transaction items, and information about the point of purchase. The issuing institution communication module **414** encrypts the request using the encryption module **408** and transmits the message to the issuing institution **112** where the information request is processed.

After the information request is processed by the issuing institution **112**, the issuing institution communication module **414** receives an account information message from the issuing institution that includes account information associated with the selected payment instrument. The account information may include, for example, the credit card number and expiration date of a credit card selected from the set of available payment instruments. After receiving the account information, the intermediary service **204** forwards the information to the acquirer **106**. In some embodiments, the account information is encrypted by the issuing institution **112** such that it can only be decrypted by the acquirer **106** (i.e., the account information cannot be interpreted by the intermediary service **204**). Alternatively, the account information may be decrypted by the intermediary service **204** and re-encrypted for transmission to the acquirer **106**. The acquirer **106** then proceeds according to the process discussed above in FIGS. **2**A-C.

As previously stated, the acquirer **108** may also send information from the authorization message and/or other transaction information to the intermediary service **204**. The mobile device communication module **416** then generates a receipt message and transmits the receipt message to the mobile device **206** using the methods discussed above. In some embodiments, the mobile device client **418** provides a "dispute" button that may be selected by the customer to indicate that the transaction was erroneous or fraudulent such that the issuing institution **110** should initiate dispute proceedings.

The intermediary service **204** also includes a customer communication module **420**, which is configured to communicate with a customer **422**. The customer communication module **420** works with a request evaluation module **424** to execute requests received from the customer **422**. In particular, the customer communication module **420** receives account setup and configuration information and enables the customer **422** to selectively change account status. The customer **422** may also communicate with the customer communication module **420** to define customer-specified rules, as discussed above. Customers **422** may send information to the customer communication module **420** using a web page or a dedicated application on a PC or mobile device.

To change the status of an account a customer **422** sends information to the customer communication module **420** to notify the intermediary service **204** that a selected account should be activated or deactivated. The information may also specify a time that the change in status should be made or a time interval over which the change should apply. For example, a customer who is planning a vacation for a week may specify that a particular account should be deactivated during that vacation but should be reactivated at the end of that time. In response, the request evaluation **424** determines

US 9,292,852 B2

21

if activation and deactivation are to be managed by the issuing institution **110** and, if necessary, provides an indication of any status change (or current status) to the issuing institution **110**. The process of changing account status is discussed in greater detail below with reference to FIGS. **10**A and **10**B.

FIGS. **6**A and **6**B illustrate a flowchart of a process **500** for processing financial transaction data executed by the intermediary service **204**. Processing begins in block **502**, where the intermediary service **204** receives an initial authorization request from an acquirer **106**. As discussed above, the initial authorization request includes unique identifying information, transaction information (e.g., the amount of the transaction, the transaction identifier, etc.), and point of purchase information. The intermediary service **204** may also receive additional transaction information directly from the point of purchase **106** through a communication channel that bypasses the acquirer. The separate communication channel may be used to send data that cannot be sent through, or is not typically sent through, the acquirer **108**. For example, stockkeeping units (SKU) for products purchased in the transaction are not sent through the acquirer since such information does not conform to reporting guidelines enforced by the acquirer. The intermediary service may therefore receive the SKUs via a separate communication from the merchant. As another example, URLs identifying a product purchased from a website are not sent through the acquirer due to a lack of specified fields for transmitting URLs. As a result, the intermediary service may receive URLs directly from the merchant via an alternate communication channel. Supplemental information about the transaction that is received by the intermediary service may be used to process the initial authorization request as described in more detail herein. The merchant may also provide the supplemental information to the intermediary service at a later time. In these cases, the intermediary service may append the supplemental information to the stored transaction information.

After receiving an initial authorization request, processing proceeds to block **504**, where the service validates the request according to the methods discussed above. The validation step may include, for example, verifying that the message is in a proper format and verifying that the message includes the essential data for handling the request. Processing then proceeds to block **506**, where the service authenticates the requester. As discussed above, the authorization request may include a digital signature provided by the acquirer that can be cryptographically verified. Alternatively, the service may authenticate the acquirer by using a shared cryptographic key to decrypt a portion of the data in the message.

The service then proceeds to block **508**, where it retrieves customer information corresponding to the information in the authorization request. Retrieving customer information may be executed by using some or all of the identifying information in the request as an index into a customer information database. As discussed above, the stored customer information may include information defining one or more payment instruments that the customer has indicated can be used to pay for a transaction. The customer information also includes an address of a mobile device, such as the mobile device's telephone number or IP address. The customer information is provided by a customer during an initial registration process in which the customer registers with the service and enters the appropriate information. Alternatively, the customer information may be provided by, for example, a financial institution that offers the intermediary service as an added benefit to a financial instrument provided to the customer.

After retrieving the stored customer information, processing proceeds to block **509**, where the stored value module **426**

22

identifies and potentially utilizes any stored value that can be applied to the transaction. This step is discussed in greater detail below with reference to FIG. **6**E. Processing then proceeds to block **510**, where the service processes the rules specified by the rules module **412**. The process executed in this step is discussed in greater detail below with reference to FIG. **6**D. The service then proceeds to block **511**, where the advertising module **428** determines any relevant advertisements based on the authorization request or the customer's information.

In some cases, the rules module **412** determines that the service should carry out a verification procedure that includes a transaction notification message. Similarly, the stored value module **426** may determine that the service should notify the customer of some or all of the available stored value items. The advertising module **428** may also generate one or more advertisements that should be sent to the customer. In these cases, processing proceeds to block **512**, where the service generates a transaction notification message. The transaction notification message includes at least a minimum amount of information to enable the customer to confirm the transaction. Thus, the transaction notification message may include the transaction time, the transaction amount, the point of purchase, and/or the purchase location. The transaction notification message may also specify a payment instrument that will be used for the transaction, or a list of payment instruments that may be used and require that the customer select from the list. In addition, the transaction notification message specifies a required response from the customer, such as an authorization/denial of the transaction or the submission of a verification code. The transaction notification message may also include a listing of available stored value items and request that the customer select items that should be applied to the transaction. Available advertisements may be sent in a separate message or included in the transaction notification message.

After generating the transaction notification message, the service proceeds to block **514**, where it sends the message to the mobile device **206**. Processing then proceeds to block **516**, where the service receives a reply from the mobile device **206**. As discussed above, this step is not executed if the transaction notification message did not require a response from the customer. The service then proceeds to decision block **518** in FIG. **6**B, where it uses the reply message to determine whether the transaction was verified by the customer. In some cases, the service may do so by detecting a verification indicator in the reply message, which could simply be a single bit or a "yes" or "no" received from the mobile device **206**. Alternatively, if the reply message includes a verification code, the service compares the received verification code to a verification code in the stored customer information. In some embodiments, the verification code is encrypted by the mobile device **206** using a one-way hash function. The intermediary service then verifies the transaction by comparing the received hash value to a value generated by applying the same one-way hash function to the stored verification code. If the reply message indicates that the customer has denied the request or the customer's verification code does not match the stored verification code, processing proceeds to block **520**, where the service rejects the authorization request. At this step, the service may transmit a rejection message to the acquirer to notify it of the rejected request.

If the transaction is verified by the customer, processing proceeds to block **521**, where the service processes the stored value portion of the reply. The reply includes a specified action for each stored value item that was included in the transaction notification. For example, the specified action

23                              24

may direct the service to retain the stored value item in the customer's account for later use. The specified action may also direct the service to apply the stored value to the transaction. To apply the stored value, the service reduces the transaction amount by the stored value item's associated value. If the associated value is expressed as a currency amount, the service reduces the transaction amount by the currency amount. If the associated value is expressed in non-currency units, the service converts the non-currency units to a corresponding currency value at a conversion rate and applies the converted value to reduce the transaction amount. In some embodiments, the service converts the non-currency units using a pre-determined conversion rate (e.g., 80 points per dollar). In other embodiments, the conversion rate is determined based on characteristics of the transaction, such as the transaction time or the merchant. For example, one merchant may offer to redeem non-currency units at one rate (e.g. 10 points to the dollar) while another merchant may offer to redeem non-currency units at another rate (e.g., 15 points to the dollar). As another example, the conversion rate may become less favorable over time so that the points become less valuable the longer the customer stores points. Such a variable conversion rate encourages customers to redeem points in a timely manner. In these embodiments, the conversion rate may be dynamically determined at the time of the transaction (e.g., by querying the coupon issuer) or based on a pre-defined schedule that specifies conversion rates based on particular characteristics. If the associated value is expressed as a percentage, the service converts the percentage to a currency amount by multiplying the percentage by the applicable portion of the transaction amount. The service then reduces the transaction amount based on the converted currency amount. The service can then provide a new transaction amount to the issuer based on the remaining amount of the transaction. The service also modifies the stored value item based on its use in the transaction. For example, the service may reduce the currency amount of a voucher based on the amount that was applied to the transaction. Similarly, the service may reduce the number of remaining uses available for a coupon. If a stored coupon only had one use remaining, the service may delete the coupon from the customer's account following the last use. If customer verification is not required, the service may apply the stored value earlier in the process, such as during the initial processing of stored value in block 510.

Processing then proceeds to block 522, where the service generates an information request using information from the initial authorization request, the customer information, and/or the customer's reply message. The information request may include identifying information from the initial authorization request or the customer information. After generating the information request in block 522, processing proceeds to block 524, where the service sends the message to the appropriate issuing institution.

Processing then proceeds to block 526, where the service receives an account information message from the issuing institution in response to the information request. As discussed above, the account information includes information associated with the selected payment instrument that can be used to authorize payment. The account information may be encrypted such that it can only be accessed by the acquirer 108. After receiving the account information, processing proceeds to block 528, where the intermediary service sends the account information and the modified transaction amount to the acquirer 108, which can then generate the modified authorization request.

FIG. 6C is a flow chart of a process 530 for defining a rule to be executed by the intermediary service. The service executes the process 530 for each rule to be defined. The process 530 may be executed by components of the intermediary service 204 (e.g., the rules module 412 and the customer communication module 420 of FIG. 5) or by a separate management component that is configured to generate rules and store the rules in the storage component 402 (FIG. 5). Rules information may be specified remotely (e.g., by a customer) connecting through a network connection. Processing begins at block 532, where the service receives an indication of whether the rule applies to an individual account, to a group of accounts, or to all accounts. After the service receives the applicable account information, processing proceeds to block 534, where the service receives information specifying one or more conditions for the rule being defined. The service then proceeds to block 536, where it receives information specifying one or more actions associated with the rule. The information specifies the actions and also associates the action with a particular result of the conditions. For example, the rule may specify a first action to be performed if the conditions are met (i.e., the conditions return "true" when evaluated) and a second action to be performed if the conditions are not met. Processing then proceeds to block 538, where the service generates a rule based on the received information and stores the rule in the storage component 402. In some embodiments, the service may also receive and store information specifying an active time interval for the rule.

FIG. 6D is a flow chart of a process 550 for processing rules by the intermediary service. The service executes the process 550 during the processing of block 509 of FIG. 6A. Thus, the process 550 is executed each time the service receives a new authorization request. Processing begins at block 552, where the service uses identifying information in the authorization request to determine which account is requesting authorization. Processing then proceeds to block 554, where the service determines rules associated with the requesting account. As discussed above, each rule is associated with an account or a set of accounts. In block 554, the service determines rules that are specifically associated with the requesting account. Processing then proceeds to block 556, where the service determines rules that apply to any group that includes the requesting account, including rules that are configured to apply to every account. The service may also filter the rules to exclude those that are not active at the current time.

Once the service has determined the full set of applicable rules, processing proceeds to block 558, where the service selects the first rule from the set of applicable rules. As illustrated in FIG. 6D, the service processes each rule in a loop until all rules have been processed. One skilled in the art will appreciate the service may use other methods to process the applicable rules, such as processing the rules in parallel using multiple threads or processes.

After the service selects the first rule to apply, processing proceeds to block 560, where the service determines the conditions specified by the selected rule. Processing then proceeds to block 562, where the service determines the relevant information for evaluating conditions for the selected rule. The relevant information depends on the particular conditions surrounding the authorization request, and may be derived from the authorization request, from stored data such as the stored customer information, or from data maintained or accessible by the service, such as the current time. Processing then proceeds to block 564, where the service evaluates the conditions based on the relevant information. As previously discussed, the conditions may be connected based on Boolean operators, such as AND or OR operations.

US 9,292,852 B2

25

Processing then proceeds to block **566**, where the service determines a corresponding action based on the result of the evaluation and queues the corresponding action for execution. As discussed above, actions are specified when the rule is defined and correspond to particular results reached by evaluation of the rule. Actions may direct the service to affirm the authorization request, to use a particular payment instrument of combination of payment instruments in response to the authorization request, to reject the authorization request, or to execute a pre-determined verification procedure before affirming the authorization request. Queuing actions allows the service to avoid executing redundant actions in response to different rules. For example, if evaluation of a first rule indicates that the authorization request should be rejected and evaluation of a second rule indicates that a particular verification procedure should be executed, only the first action should be executed, because it would be pointless to do the verification procedure for a rejected transaction. By queuing actions, the service can look at all actions before attempting to execute any action. After the action is queued, processing proceeds to decision block **568**, where the service determines if there are additional rules to be processed. If there are additional rules, processing returns to block **558**, where the service selects the next rule and repeats the evaluation process. When no rules remain to be evaluated, the process ends.

The use of rules allows a customer, merchant, or the service to specify how authorization requests are processed for particular accounts. In addition to having rules to process such requests, in some circumstances it is beneficial to allow the customer or service greater control over the status of the account. That is, it would be beneficial to allow the customer or the service to easily turn an account on or off on a temporary basis. Such a feature would allow a customer, for example, to disable an account when desirable (e.g., when the customer is on vacation and will not be using one of the customer's accounts). FIG. **10**A is a flowchart of a process **1000** for controlling the status of an account through the intermediary service. The steps of the process **1000** may be implemented using various components of the intermediary service **204**, such as the customer communication module **420** and the request evaluation module **424**. Prior to executing the process **100**, the intermediary service **204** will have registered a customer's account. In the registration process, the customer communication module **420** receives account information, such as an account identifier and information identifying the issuing institution, from the customer. The intermediary service **204** may also have also verified the account and set up a relationship between the intermediary service **204** and the issuing institution **110**, if one was not previously established.

For any registered account, processing begins at block **1002**, where the service receives a request to change the account's status. The request may be received at any time after the account has been registered. The request includes information such as the account identifier, the requested change to the account status (e.g., to activate or deactivate the account), and, optionally, an applicable time interval for which the account status should be changed. After receiving the request, processing proceeds to block **1004**, where the service uses the account identifier, or other identifying information, to retrieve account information for the account from the storage component **402**. The retrieved information includes the identity of the issuing institution **110** and may also include information for verifying the authenticity of the status change, such as the customer's mobile telephone number. Processing then proceeds to decision block **1006**, where the service determines whether a verification procedure

26

should be performed to confirm the account status change. Whether the service performs a verification procedure configured by the customer and/or the service. If a verification procedure is to be performed, processing continues to a block **1008**. At block **1008**, the service performs a verification procedure before continuing with the status change process. The verification procedure may include, for example, sending a message to the customer's mobile device and receiving confirmation from the customer via the mobile device. If the customer does not confirm the authenticity of the request to change the status of the account, the service rejects the status change. The customer may be required to confirm the authenticity by, for example, affirmatively responding to the verification procedure with an appropriate verification code. Other previously-described techniques for verifying a transaction request may similarly be applied to the verification of the status change.

If the verification procedure is successful, or if it is not performed, processing proceeds to decision block **1010**, where the service determines if activation and deactivation will be managed by the issuing institution **110**. The determination of whether the activation/deactivation is managed by the issuing institution may be based on an agreement between the issuing institution **110** and the intermediary service **204** or based on customer-specified settings. If status will not be managed by the issuing institution, processing proceeds to block **1012**, where the service uses the rules module **412** to change the account status. In particular, if the request directs the service to deactivate the account for a selected time period, the service defines a rule to reject authorization requests during the specified time period. Similarly, if the request later directs the service to activate the account, the service controls the rules module **412** to remove or modify previously-applied rules that rejected authorization requests during a specified time period. The modification of rules by the rules module is carried out according to the process discussed above with reference to FIGS. **6**C and **6**D.

If the service determines that status will be managed by the issuing institution **110**, processing proceeds to decision block **1014** where the service determines whether the account status information will be stored locally. As above, this may be determined by the customer or may be based on an agreement between the issuing institution **110** and the intermediary service **204**. An advantage of having the intermediary service **204** store status information is the issuing institution **110** can avoid incurring the cost of developing infrastructure to receive and store the status information. Instead, as discussed below with reference to FIG. **10**B, the issuing institution **110** can query the intermediary service **204** for status information as needed, such as in response to an authorization request. If the service determines that the account status information will be stored by the issuing institution **110**, processing proceeds to block **1016**, where the service transmits a message to the issuing institution **110**. The message notifies the issuing institution **110** of the new status for the specified account and may be encrypted using the methods described above for handling authorization requests. If the service determines that the status will not be stored by the issuing institution, processing proceeds to block **1018**, where the service stores the account status in the storage component **402**. In some embodiments, the service may allow the customer to specify a start time for the change in account status. In these embodiments, the service only notifies the issuing institution **110** of any change in account status after the specified start time has passed.

Account status may be changed at a later time using a similar process. In one embodiment, the customer's request

27
28

may specify a time interval for a particular status change. At the beginning of the interval, the intermediary service **204** provides an indication of the status change (e.g., by sending a message to the issuing institution) and at the end of the interval the service provides a second indication to return the account to its original status. Any request to change account status may specify a time in the future to implement a particular status change, rather than making the change immediately. When the specified time is reached, the intermediary service makes the requested change or initiates the requested change by transmitting appropriate messages to the issuing institution. Alternatively, the issuing institution **110** may manage the timing itself. In this case, the intermediary service **204** provides the end time to the issuing institution **110** at the same time that it notifies the issuing institution **110** of the first status change. The issuing institution **110** then reverts to the original account status after the specified end time has passed.

If an attempt is made to use a deactivated account, the service may be configured to automatically notify the customer of, or query the customer about, the attempt. For example, the intermediary service **204** may send a notification message providing transaction information when an attempt is made to utilize a deactivated account. The notification message allows the customer to investigate the source of transaction and to reassess whether the account should remain deactivated. The notification message may allow the customer to reactivate the account from the customer's mobile device. Reactivation of the account could be done using a verification procedure similar to the previously-described procedure. That is, the service sends a notification message to the customer and allows the customer to reactivate the account by sending an appropriate authorization message to the service. In some embodiments, the service may be configured to require a verification code to reactivate the account.

When the intermediary service allows customers to manage the status of their account, the issuing institution and the intermediary service coordinate to ensure that the issuing institution properly allows or rejects authorization requests based on the account status. FIG. **10**B is a flowchart of a process **1040** for handling an authorization request by the issuing institution **110**. Processing begins at block **1042**, where the issuing institution **110** receives an authorization request from the payment association **112**.

Processing then proceeds to block **1044**, where the issuing institution **110** looks up account information associated with the authorization request. Processing then proceeds to decision block **1046**, where the issuing institution uses the account information to determine whether account status is stored by the issuing institution **110** or the intermediary service **204**. If the status is stored by the issuing institution **110**, processing proceeds to block **1048**, where the institution looks up the current account status using an account database. Otherwise, processing proceeds to block **1050**, where the institution communicates with the intermediary service **204** to request account status information.

Once the issuing institution **110** has received the current status for the account, processing proceeds to decision block **1052**, where the issuing institution evaluates the current status to determine if the account is activated. If the account is activated, processing proceeds to block **1054**, where the issuing institution handles the authorization request using standard credit procedures. If the account is not activated, processing proceeds to block **1056**, where the institution rejects the authorization request. After the request has been handled, the process ends.

FIG. **6**E is a flowchart of a process **570** for processing stored value by the intermediary service **204**. The service executes the process **570** during the processing of block **510** of FIG. **6**A. Processing begins at block **572**, where the service retrieves the customer information associated with the identifying information in the authorization request. At a block **574**, the service retrieves the merchant information associated with the merchant identifier in the authorization request. At a block **576**, the service uses the listing of transaction items in the authorization request to determine the products purchased during the transaction. The service may also use a product database to retrieve additional details about the products, such as product type and manufacturer.

At a block **578**, the service retrieves applicable stored value items based on the information determined in blocks **572**–**576**. As previously discussed, some stored value items are linked with the customer (i.e., stored in associated with a customer's account), such as vouchers and saved coupons. Stored value items may also be generated based on aspects of the current transaction or the customer's transaction history. For example, the service may generate coupons for transactions with a particular merchant or for transactions that include particular products. The service may also use a customer's transaction history to determine applicable coupons. Coupons based on a transaction history may be used to reward loyal customers, such as customers that buy from a particular merchant, or buy a particular product more than a specified number of times over a specified time period. The service may also provide coupons for products that relate to a purchased item, such as accessories for a mobile device. The service may also provide coupons for a particular product when the customer purchases similar products from other manufacturers. The service may also generated coupons based on the transaction time; for example, the service may be configured to generate coupons for a merchant or manufacturer during a specified time period coinciding with a sale.

The intermediary service may be configured to handle the stored value items in various ways. For example, the service may be configured to handle all items identically, such as by automatically applying each item to the transaction or automatically requiring customer verification before applying any items to the transaction. However, the service may also allow a customer to define rules to specify how individual stored value items should be applied. Thus, the process **570** includes a loop that evaluates each stored value item separately. One skilled in the art will appreciate that the loop can be collapsed into a single iteration if the service is configured to treat all stored value items identically.

The loop begins at block **580**, where the service selects the next stored value item on the list. Processing then proceeds to decision block **582**, where the service determines whether the stored value item should be applied automatically. In block **582**, the service evaluates a set of rules to determine whether the service should request verification before applying the selected stored value item. The evaluated rules may use factors similar to those discussed above with reference to the rules module. For example, the customer may specify that vouchers should be applied automatically, while coupons should be applied only after the customer has approved them by sending a response to a transaction notification. The customer may also specify that coupons for particular products or particular merchants should be applied automatically, while other coupons require verification before being applied.

If the service determines that the stored value item is to be applied automatically, processing proceeds to block **584**, where the service applies the stored value item to the transaction. As discussed above, the service may do so by reducing

US 9,292,852 B2

29 30

the transaction amount by the stored value item's currency amount. Thus, if the transaction amount is $35 and the service applies a $5 coupon, the new transaction amount is $30. For stored value items denominated in non-currency units, the service also converts the value from non-currency units to a corresponding currency amount before applying the value to the transaction. If the stored value item's associated value is expressed as a percentage of the transaction amount, the service first converts the percentage to a currency amount before applying the currency amount. If the service determines that the item should not be applied automatically, processing proceeds to block **586**, where the service adds the stored value item to a list of items that are to be included in the transaction notification. The list is used in block **512** of FIG. **6**A, where the service generates the transaction notification. The service then applies selected stored value items in block **521** of FIG. **6**B after the customer responds to the transaction notification. After the service has handled the selected item, processing proceeds to decision block **588**, where the service determines if there are additional stored value items to be processed. If items remain, the service returns to block **580** to process the next item. Otherwise, the process ends.

FIG. **7** is a flowchart of a process **700** for processing financial transaction data executed by an acquirer **108**. The process **700** is executed by the acquirer **108** in conjunction with the process **500** executed by the intermediary service of FIGS. **6**A and **6**B. Processing begins at block **702**, where the acquirer **108** receives an initial authorization request from the point of purchase **106**. At a decision block **704**, the acquirer determines whether the initial authorization request should be routed to the intermediary service **204** based on the identifying information contained in the initial authorization request. The determination may include, for example, assessing whether an identifying number contained in the initial authorization request falls within a range of identifying numbers or has a particular prefix associated with the intermediary service **204**. If the initial authorization request is not associated with the intermediary service, at a block **706** the acquirer forwards the initial authorization request to the payment association **112** for processing in accordance with traditional processes as described in FIG. **1**. If, however, the identifying information contained in the initial authorization request indicates that the initial authorization request is associated with the intermediary service, processing continues to block **708**. At block **708**, the acquirer **108** sends at least part of the data from the initial authorization request to the intermediary service **204**.

Processing then proceeds to block **710**, where the acquirer **108** receives account information from the intermediary service **204**. The intermediary service **204** determines the account information using the process **500** of FIGS. **6**A and **6**B. The received account information may be received in encrypted or unencrypted form. If encrypted by the issuing institution or the intermediary service, the acquirer **108** may decrypt the account information using a locally-stored encryption key. After receiving the account information, processing proceeds to block **712**, where the acquirer **108** generates a modified authorization request based on the initial authorization request and the received account information. As discussed above, the acquirer **108** may generate the modified authorization request by replacing identifying information contained in the original request with the received account information. The following is an example of an initial authorization request such as might be received from a point of purchase:

> Transaction Identifier
> Identifying Information
> Initial Track 2 Data (optional)
> Industry Standard Code
> Merchant Information
> Transaction Amount
> Transaction Items

The identifying information results in the initial authorization request being sent to the intermediary service **204**. After sending the initial authorization request to the intermediary service **204**, the acquirer may receive the following account information in response:

> Transaction Identifier
> Real Account Information

The acquirer **108** would then construct the following modified authorization request:

> Transaction Identifier
> Real Account Information
> Real Track 2 Data (optional)
> Industry Standard Code
> Merchant Information
> Transaction Amount
> Transaction Items

For record-keeping purposes, and in order to ensure that authorization requests are correctly associated with received account information, a transaction identifier may be assigned to each transaction and used by the acquirer and the intermediary server to ensure that all sent and received messages are correctly correlated. The acquirer may store all initial authorization requests, received account information, and modified authorization requests in a data structure so that the acquirer or a third party may subsequently audit the information and confirm that transactions are being appropriately processed.

After the modified authorization request is generated, processing then proceeds to block **714** where the acquirer **108** sends the modified authorization request to the payment association **112**. In block **716**, the acquirer **108** receives an authorization or a denial in response to the modified authorization request. The acquirer **108** then completes the authorization process by sending the authorization or denial message to the point of purchase **106** in block **718**. As discussed above, the acquirer **108** may also send the authorization or denial message to the intermediary service **204** so that the intermediary service **204** can send a receipt message to the customer's mobile device **206**. The acquirer **108** may also send transaction details, such as the list of transaction items, to the intermediary service **204** so that the receipt message can include additional transaction details.

While the process **700** has been described as being implemented by the acquirer **108**, it will be appreciated that process **700** can be implemented by any party that participates in the transaction approval process. For example, the payment association **112** or an issuing institution **110** may forward initial authorization requests to the intermediary service **204** in lieu of the acquirer forwarding the request. The account information is then returned to the payment association or issuing institution for further processing.

FIG. **8** illustrates a logical block diagram of the acquirer **108** that implements the process **700** of FIG. **7**. The acquirer **108** redirects certain authorization requests to the intermedi-

US 9,292,852 B2

31

ary service **204** and generates modified authorization requests based on information provided by the intermediary service **204**. As with the intermediary service **204** shown in FIG. **5**, aspects of the acquirer **108** may be implemented as special-purpose circuitry, programmable circuitry, or as a combination of these. The modules in the acquirer **108** may be implemented in a single physical device or distributed over multiple physical devices and the functionality implemented by calls to remote services.

As discussed above, the acquirer **108** receives an initial transaction authorization request from the point of purchase **106** and transmits a modified authorization request to the issuing institution **110** via the payment association **112**. The acquirer **108** also communicates with the intermediary service **204** to request account information associated with a particular authorization request and to receive the requested account information. The acquirer **108** also interacts with a storage component **802**, which is configured to store information used to integrate with the intermediary service **204**. In particular, the storage component **802** stores information identifying information (such as ranges of account numbers or account number prefixes) that can be used to determine which authorization requests should be handled by the intermediary service **204**. The storage component **802** may also store historical transaction information to be used for auditing or if a transaction is disputed.

The acquirer **108** includes various modules to assist in processing authorization requests. In particular, the acquirer **108** includes a point of purchase communication module **804**, which is configured to communicate with the point of purchase **106** to receive initial authorization requests and transmit authorization or denial messages at the end of the transaction. The acquirer **108** also includes an evaluation module **806**, which is configured to evaluate initial authorization requests according to the process **700** described above to determine if initial authorization requests should be sent to the intermediary service **204**.

The acquirer **108** also includes an intermediary service communication module **808**, which is configured to communicate with the intermediary service **204** to send authorization requests and to receive account information. The intermediary service communication module **808** then provides the account information to an authorization request generator module **810**, which is configured to generate a modified authorization request based on the initial authorization request and the received account information. The modified authorization request is then provided to a payment association communication module **812**, which is configured to communicate with the payment association **112** to send the modified authorization requests to the issuing institution **110**. After the issuing institution **110** approves or denies a transaction, the payment association communication module **812** also receives an authorization or denial message from the payment association **112**. The acquirer **108** then forwards the message to the point of purchase **106** and/or the intermediary service **204**.

One of the advantages of the disclosed intermediary service **204** is that it allows routing of encrypted messages through the service without revealing sensitive information that is contained in the messages to the operator of the service. FIG. **9** is a block diagram depicting various message routing paths through the intermediary service **204**. Complementary encryption keys are depicted as being maintained by different parties that participate in the processing of a financial transaction. For example, a key A that is maintained by acquirer **108** allows the acquirer to encrypt messages and communicate in a secure fashion with the intermediary service **204**,

32

which maintains a complementary key A' for decoding the encrypted messages. Similarly the intermediary service **204** maintains a key B' that allows it to communicate in a secure fashion with the mobile device **206**, which maintains a complementary key B. Moreover, the intermediary service **204** also maintains a key C' that allows it to communication in a secure fashion with the issuing institution **110**, which maintains a key C. Of note, however, is the ability of the acquirer **108** and the issuing institution **110** to exchange encrypted messages or portions of messages through the intermediary service without allowing the service to read or otherwise act on the contents of the messages. For example, certain portions of the point of purchase information from the initial authorization request (e.g., the specific products being purchased) may be encrypted by the acquirer **108** using an encryption key D. When the intermediary services **204** receives messages or portions of messages that are encrypted, the service copies the encrypted messages or portions of messages and forwards the copied messages to the issuing institution **110**. The issuing institution **110** is able to decrypt the encrypted message or portion of the message using key D'. Similarly, the issuing institution **110** may encrypt account information using key D so that the information may be read only by the acquirer **108**. An advantage of this is that the intermediary service **204** never has usable access to the encrypted information. This allows the acquirer to retain control over non-essential customer information, such as certain point of purchase information, and increases the privacy of the information. It also allows the issuing institution to pass certain account information, such as the card number and PIN number of a customer's debit card, to the acquirer **108**, thereby allowing the acquirer to process financial transactions that might not have been previously available to the acquirer (e.g., such as during an online purchase).

From the foregoing, it will be appreciated that specific embodiments of the invention have been described herein for purposes of illustration, but that various modifications may be made without deviating from the invention. For example, those skilled in the art will further appreciate that the depicted flow charts may be altered in a variety of ways. The order of the steps may be rearranged, steps may be performed in parallel, steps may be omitted, or other steps may be included. Accordingly, the invention is not limited except as by the appended claims.

We claim:

**1**. A computer-implemented method for processing financial transaction data in a computing system including a processor and a storage area, the method comprising:

receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;

based on the authorization request, determining one or more stored value items to apply to the transaction, wherein each stored value item includes an associated value,

wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and

wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

US 9,292,852 B2

**33**

transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;

receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;

applying the indicated at least one stored value item to pay a first portion of the transaction amount; and

initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

**2**. The method of claim **1**, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product.

**3**. The method of claim **1**, wherein the associated value is expressed as a currency amount.

**4**. The method of claim **1**, wherein the associated value is expressed as a percentage of a portion of the transaction amount.

**5**. The method of claim **1**, wherein the associated value is expressed in non-currency units and further comprising converting the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount.

**6**. The method of claim **5**, wherein the conversion rate is determined based on characteristics of the transaction.

**7**. The method of claim **1**, wherein the transaction information identifies a product purchased during the transaction, and wherein a stored value item is determined based on the identified product.

**8**. The method of claim **1**, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction.

**9**. The method of claim **1**, wherein a stored value item is determined based on a transaction history of the purchaser.

**10**. The method of claim **1**, wherein initiating a payment process comprises:

generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and

transmitting the modified authorization request to an issuing institution for authorization of payment.

**11**. The method of claim **1**, wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request.

**12**. The method of claim **1**, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

**13**. The method of claim **12**, wherein the associated transaction conditions include an identity of a product being purchased.

**14**. The method of claim **12**, wherein the associated transaction conditions include a time period during which the stored value item is valid.

**15**. A system for processing financial transaction data, the system comprising:

**34**

a processor;

a storage component configured to store a plurality of stored value items,

wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

a communication module configured to receive an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction; and

a stored value module configured to:

based on the authorization request, determine one or more stored value item to apply to the transaction, wherein each stored value item includes an associated value,

wherein the one or more stored value items are selected from the plurality of stored value items stored in the storage area, and;

transmit a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;

receive an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;

apply the indicated at least one stored value item to pay a first portion of the transaction amount; and

initiate a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

**16**. The system of claim **15**, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product.

**17**. The system of claim **15**, wherein the associated value is expressed as a currency amount.

**18**. The system of claim **15**, wherein the associated value is expressed in non-currency units and wherein the stored value module is further configured to convert the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount.

**19**. The system of claim **18**, wherein the conversion rate is determined based on characteristics of the transaction.

**20**. The system of claim **15**, wherein the transaction information identifies a product purchased during the transaction, and wherein the stored value item is determined based on the identified product.

**21**. The system of claim **15**, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction.

**22**. The system of claim **15**, wherein a stored value item is determined based on a transaction history of the purchaser.

**23**. The system of claim **15**, wherein initiating a payment process comprises:

generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and

US 9,292,852 B2

35

transmitting the modified authorization request to an issuing institution for authorization of payment.

**24**. The system of claim **15**, wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request.

**25**. The system of claim **15**, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

**26**. The system of claim **25**, wherein the associated transaction conditions include an identity of a product being purchased.

**27**. The system of claim **25**, wherein the associated transaction conditions include a time period during which the stored value item is valid.

**28**. A computer-readable medium containing instructions for processing financial transaction data in a computing system including a processor and an associated storage area, by a method comprising:

receiving an authorization request generated as a result of a transaction by a purchaser at a point of purchase via an acquirer configured to receive authorization requests from a plurality of points of purchase, wherein the authorization request includes a purchaser identifier and transaction information, the transaction information including a transaction amount, and wherein the purchaser identifier identifies the purchaser that initiated the transaction;

based on the authorization request, determining one or more stored value items to apply to the transaction, wherein the stored value item includes an associated value,

wherein the one or more stored value items are selected from a plurality of stored value items stored in the storage area, and

wherein the plurality of stored value items includes stored value items provided by a plurality of different third parties;

transmitting a transaction indication message to a mobile device associated with the purchaser identifier, wherein the transaction indication message includes information about the determined one or more stored value items;

receiving an indication from a user of the mobile device that at least one stored value item should be applied against the transaction;

applying the stored value item to pay a first portion of the transaction amount; and

initiating a payment process to pay a remaining portion of the transaction amount by providing a modified transaction amount to the acquirer for submission to a payment association.

36

**29**. The computer-readable medium of claim **28**, wherein a stored value item is a coupon for use in transactions with a specified merchant or for a specified product.

**30**. The computer-readable medium of claim **28**, wherein the associated value is expressed as a currency amount.

**31**. The computer-readable medium of claim **28**, wherein the associated value is expressed in non-currency units and further comprising converting the non-currency units to a currency amount using a conversion rate before applying the indicated at least one stored value item to the first portion of the transaction amount.

**32**. The computer-readable medium of claim **31**, wherein the conversion rate is determined based on characteristics of the transaction.

**33**. The computer-readable medium of claim **28**, wherein the transaction information identifies a product purchased during the transaction, and wherein a stored value item is determined based on a product purchased during the transaction.

**34**. The computer-readable medium of claim **28**, wherein a stored value item is associated with an applicable time or time period and the stored value item is determined based on a time associated with the transaction.

**35**. The computer-readable medium of claim **28**, wherein a stored value item is determined based on a transaction history of the purchaser.

**36**. The computer-readable medium of claim **28**, wherein initiating a payment process comprises:

generating a modified authorization request based on the received authorization request, wherein the modified authorization request includes a modified transaction amount based on the remaining portion of the transaction amount; and

transmitting the modified authorization request to an issuing institution for authorization of payment.

**37**. The computer-readable medium of claim **28**, wherein the one or more stored value items are uniquely associated with the purchaser identifier in the authorization request.

**38**. The computer-readable medium of claim **28**, wherein a plurality of stored value items are contained in the storage area and each stored value item has associated transaction conditions under which a stored value item is to be applied, and wherein determining the one or more stored value items to apply to the transaction comprises selecting a stored value item from the plurality of stored value items in response to determining that the associated transaction conditions under which the stored value item is to be applied are satisfied by the authorization request.

**39**. The computer-readable medium of claim **38**, wherein the associated transaction conditions include an identity of a product being purchased.

**40**. The computer-readable medium of claim **38**, wherein the associated transaction conditions include a time period during which the stored value item is valid.

\* \* \* \* \*